# Exhibit A

███████████████████████

███████████████████████

**SCHEDULE A**
**DESCRIPTION**

**Block 1172 and Lot 1129**

The Condominium Unit (the "Unit") known as Unit No. 4F in the building (the "Building") known as One Eastern Parkway and by the street number 1 Grand Army Plaza a/k/a 1 Eastern Parkway, Brooklyn, New York, said Unit being designated and described as the Unit No. 4F in the Declaration establishing a plan for condominium ownership of said premises under Article 9-B of the Real Property Law of the State of New York, (the "New York Condominium Act") dated as of October 28, 2008 and recorded in the Kings County Office of the Register of the City of New York on December 22, 2008, under CRFN 2008000483911, and also designated as Tax Lot 1129 in Block 1172 of the Borough of Brooklyn on the Tax Map of the Real Property Assessment Department of the City of New York and on the Floor Plans of said Building, certified by Steven B. Jacobs FAIA on December 16, 2008, as approved by the Real Property Assessment Development of the City of New York on December 16, 2008, as approved by the Real Property Assessment Department of the City of New York on December 17, 2008 as Condominium Plan No. 2326, Map number CRFN 2008000483912, recorded on December 22, 2008.

TOGETHER WITH an undivided 1.879807% interest in the Common Elements.

The premises within which the Unit is located are more particularly described as follows:

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the easterly side of Plaza Street East and the northerly side of Eastern Parkway;

RUNNING THENCE northerly along the easterly side of Plaza Street East, along an arc of a curve bearing to the left, having a radius of 830 feet, a distance of 220 feet 3 inches to the corner formed by the intersection of the said easterly side of Plaza Street East and the southerly side of St. Johns Place;

RUNNING THENCE easterly along the said southerly side of St. Johns Place, 79 feet;

THENCE southerly along a line forming an interior angle of 85 degrees 52 minutes 41 seconds with the southerly side of St. Johns Place, 100 feet 3-1/8 inches;

RUNNING THENCE westerly along a line at right angles to the last mentioned course, 20 feet 5-5/8 inches;

THENCE southerly along a line forming an exterior angle of 113 degrees 15 minutes 42 seconds with the last mentioned course, 46 feet 8-1/2 inches;

THENCE easterly along a line at right angles to the last mentioned course, 8 feet 6-1/4 inches;

THENCE southerly along a line at right angles to the last mentioned course, 35 feet 2-3/4 inches;

THENCE westerly along a line at right angles to the last mentioned course, 2 feet 11 inches;



**SCHEDULE A**
**DESCRIPTION**

THENCE southerly along a line at right angles to the last mentioned course, 29 feet;

THENCE easterly along a line at right angles to the last mentioned course, 8 feet 9-1/2 inches;

THENCE southerly along a line at right angles to the last mentioned course, 35 feet ¾ inches to the northerly side of Eastern Parkway;

RUNNING THENCE westerly along the northerly side of Eastern Parkway, 104 feet 8-1/2 inches to the corner formed by the intersection of the said northerly side of Eastern Parkway and the easterly side of Plaza Street East, the point or place of BEGINNING.

**Premises known as 1 Grand Army Plaza, Unit 4F, Brooklyn, New York 11238**

# Exhibit B



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2022072001171001002E0EB0

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 42 |
|---|---|---|
| Document ID: **2022072001171001** | Document Date: 07-12-2022 | Preparation Date: 07-29-2022 |

Document Type: MORTGAGE
Document Page Count: 41

| PRESENTER: | RETURN TO: |
|---|---|
| OMNI TITLE AGENCY<br>6800 JERICHO TURNPIKE, SUITE 212E<br>2104-2973547<br>SYOSSET, NY 11791<br>516-621-1100<br>GIO@OMNITITLE.COM | OMNI TITLE AGENCY<br>6800 JERICHO TURNPIKE, SUITE 212E<br>2104-2973547<br>SYOSSET, NY 11791<br>516-621-1100<br>GIO@OMNITITLE.COM |

## PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 1172 | 1129  Entire Lot | 4F | 1 GRAND ARMY PLAZA |

**Property Type:** SINGLE RESIDENTIAL CONDO UNIT

## CROSS REFERENCE DATA

CRFN_____ *or* DocumentID_____ *or* _____ Year_____ Reel____ Page_____ *or* File Number_____

## PARTIES

| MORTGAGOR/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| THE HERMES HIPPIE LLC<br>1 GRAND ARMY PLAZA, UNIT 4F<br>BROOKLYN, NY 11238 | LENDING ASSETS LLC<br>C/O TOWER FUND CAPITAL, 1325 AVENUE OF THE<br>AMERICAS, 28TH FLOOR<br>NEW YORK, NY 10019 |

## FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 2,560,000.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 2,560,000.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES:   County (Basic): | $ | 12,800.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 28,800.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 6,400.00 | | | |
| MTA: | $ | 7,650.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 55,650.00 | | | |
| Recording Fee: | $ | 242.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**

Recorded/Filed          08-02-2022 12:14
City Register File No.(CRFN):
**2022000305770**

*Annette M Hill*

*City Register Official Signature*

# MORTGAGE AND SECURITY AGREEMENT

-by-

## THE HERMES HIPPIE LLC

-to-

## LENDING ASSETS LLC

TAX MAP DESIGNATION OF THE PREMISES ENCUMBERED HEREBY:

| | |
|---|---|
| BLOCK | 1172 |
| LOT | 1129 |
| COUNTY | Kings |
| PREMISES | 1 Grand Army Plaza, Unit 4F, Brooklyn, New York 11238 a/k/a One Grand Army Plaza Condominium |

Record and Return to:

Weltz Kakos Gerbi Wolinetz Volynsky LLP
Attn: Gabriel Gerbi, Esq.
9889 S. Santa Monica Blvd., Suite 210
Beverly Hill, CA 90212

Title No.: 2104-2973547
Title Co.: Omni Title Agency

THIS MORTGAGE DOES NOT COVER REAL PROPERTY PRINCIPALLY IMPROVED OR TO BE IMPROVED BY ONE OR MORE STRUCTURES CONTAINING IN THE AGGREGATE NOT MORE THAN SIX RESIDENTIAL DWELLING UNITS, EACH DWELLING UNIT HAVING ITS OWN SEPARATE COOKING FACILITIES.

THIS MORTGAGE SECURES A MAXIMUM PRINCIPAL INDEBTEDNESS OF $2,560,000.00 PLUS INTEREST AND COSTS.

THIS DOCUMENT SERVES AS A FIXTURE FILING UNDER THE UNIFORM COMMERCIAL CODE.

This Security Agreement covers real property improved, or to be improved, by a one or two family dwelling only.

- 11 -

**THIS MORTGAGE AND SECURITY AGREEMENT** (hereinafter referred to as the "**Mortgage**") made as of the 12th day of July, 2022, between **THE HERMES HIPPIE LLC**, a New York limited liability company, having an address at 1 Grand Army Plaza, Unit 4F, Brooklyn, New York 11238 (hereinafter, "**Mortgagor**") and **LENDING ASSETS LLC**, a New York limited liability company, its successors and/or assigns, as their interests may appear, having offices at c/o Tower Fund Capital, 1325 Avenue of the Americas, 28th Floor, New York, New York 10019 (hereinafter, the "**Mortgagee**").

## WITNESSETH:

**WHEREAS**, Mortgagor is the fee owner of the real property described in Schedule A attached hereto (hereinafter, collectively, the "**Premises**");

**WHEREAS**, Mortgagor is the maker of that certain Note of even date herewith in favor of Mortgagee, as same now exists or may hereinafter be amended, modified, supplemented, extended, renewed, restated or replaced (hereinafter, the "**Note**") in the principal sum of TWO MILLION FIVE HUNDRED SIXTY THOUSAND AND 00/100 DOLLARS ($2,560,000.00), together with interest (said principal sum, interest and all other sums which may or shall become due under the Note or under this Mortgage, being hereinafter, collectively, the "**Debt**");

**NOW, THEREFORE**, in consideration of the loan made as of the date hereof by Mortgagee to Mortgagor and other good and lawful consideration, the receipt and sufficiency of which are hereby acknowledged, to secure to Mortgagee (a) repayment of the Debt and all renewals, modifications and extensions thereof; (b) payment of all other sums advanced in accordance with the terms of the Note or this Mortgage in order to protect the security hereof, together with interest thereon, and (c) performance of the agreements of Mortgagor contained herein, it is agreed as follows:

A. The Mortgagor hereby mortgages, grants, assigns, releases, transfers, pledges and sets over to Mortgagee and grants to Mortgagee a security interest in all of the right, title, interest and estate of Mortgagor, now owned, or hereafter acquired, in and to the following property, rights, interests and estates (such property, rights and interests being hereinbefore and hereinafter, collectively, the "**Mortgaged Property**"):

    (a)    the Premises;

    (b)    all buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located on the Premises (hereinafter, collectively, the "**Improvements**");

    (c)    all easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, all rights to oil, gas, minerals, coal and other substances of any kind or character, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the Premises and the Improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road, highway,

alley or avenue, opened, vacated or proposed, in front of or adjoining the Premises, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Mortgagor of, in and to the Premises and the Improvements and every part and parcel thereof, with the appurtenances thereto;

(d) all machinery, furniture, furnishings, equipment, computer software and hardware, fixtures (including, without limitation, all heating, air conditioning, plumbing, lighting, communications and elevator fixtures) and other property of every kind and nature, whether tangible or intangible, whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, and usable in connection with the present or future operation and occupancy of the Premises and the Improvements and all building equipment, materials and supplies of any nature whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, or usable in connection with the present or future operation, enjoyment and occupancy of the Premises and the Improvements (hereinafter collectively referred to as the "**Equipment**"), including any leases of any of the foregoing, any deposits existing at any time in connection with any of the foregoing, and the proceeds of any sale or transfer of the foregoing, and the right, title and interest of Mortgagor in and to any of the Equipment which may be subject to any "security interests", as defined in the Uniform Commercial Code, as adopted and enacted by the State or States where any of the Mortgaged Property is located ( the "**UCC**"), superior in lien to the lien of this Mortgage;

(e) all awards or payments, including interest thereon, that may heretofore and hereafter be made with respect to the Premises and the Improvements, whether from the exercise of the right of eminent domain or condemnation (including, without limitation, any transfer made in lieu of or in anticipation of the exercise of said rights), or for a change of grade, or for any other injury to or decrease in the value of the Premises and the Improvements;

(f) all leases and other agreements or arrangements heretofore or hereafter entered into affecting the use, enjoyment or occupancy of, or the conduct of any activity upon or in, the Premises and the Improvements, including any extensions, renewals, modifications or amendments thereof (hereinafter collectively referred to as the "**Leases**") and all rents, rent equivalents, moneys payable as damages or in lieu of rent or rent equivalents, royalties (including, without limitation, all oil and gas or other mineral royalties and bonuses), income, fees, receivables, receipts, revenues, deposits (including, without limitation, security, utility and other deposits), accounts, cash, issues, profits, charges for services rendered, and other payment and

- 2 -

consideration of whatever form or nature received by or paid to or for the account of or benefit of Mortgagor or its agents or employees from any and all sources arising from or attributable to the Premises and the Improvements (hereinafter, collectively, the "**Rents**") together with all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt;

(g)     all proceeds of and any unearned premiums on any insurance policies covering the Mortgaged Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Mortgaged Property;

(h)     the right, in the name and on behalf of Mortgagor, to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to commence any action or proceeding to protect the interest of Mortgagee in the Mortgaged Property; all accounts, escrows, documents, instruments, investment property, chattel paper, claims, deposits and general intangibles, as the foregoing terms are defined in the Uniform Commercial Code, and all franchises, trade names, trademarks, symbols, service marks, books, records, plans, specifications, designs, drawings, permits, consents, licenses, management agreements, contract rights (including, without limitation, any contract with any architect or engineer or with any other provider of goods or services for or in connection with any construction, repair, or other work upon the Mortgaged Property), approvals, actions, refunds of real estate taxes and assessments (and any other governmental impositions related to the Mortgaged Property), and causes of action that now or hereafter relate to, are derived from or are used in connection with the Mortgaged Property, or the use, operation, maintenance, occupancy or enjoyment thereof or the conduct of any business or activities thereon (hereinafter collectively referred to as the "**Intangibles**");

(j)     all proceeds, products, offspring, rents and profits from any of the foregoing, including, without limitation, those from sale, exchange, transfer, collection, loss, damage, disposition, substitution, or replacement of any of the foregoing.

B.  The Debt shall without notice become immediately due and payable at the option of Mortgagee if any payment required herein is not paid when due or on the happening of any "**Event of Default**" (hereinafter defined). All of the terms, covenants and conditions contained in this Mortgage are hereby made part of the Note to the same extent and with the same force as if they were fully set forth therein.

C.  Mortgagor waives presentment and demand for payment, notice of dishonor, protest and notice of protest of the Note.

- 3 -

D. Mortgagor represents, warrants and covenants that (i) there are no offsets, counterclaims or defenses against the Debt, this Mortgage, or the Note, (ii) the Mortgagor (and the undersigned representative of Mortgagor, if any) has full power, authority and legal right to execute this Mortgage and to keep and observe all of the terms of this Mortgage on Mortgagor's part to be observed or performed, and (iii) the Note and this Mortgage constitute valid and binding obligations of Mortgagor.

E. Except as otherwise provided to the contrary in the following numbered sections, all defined terms in the following numbered sections shall have the meaning given to such terms in the body of this Mortgage.

## MORTGAGOR REPRESENTS AND WARRANTS TO AND COVENANTS AND AGREES WITH MORTGAGEE AS FOLLOWS:

### SECTION 1.  Payment of Debt and Incorporation of Covenants, Conditions and Agreements.

Mortgagor will pay the Debt at the time and in the manner provided in the Note and in this Mortgage. All the covenants, conditions and agreements contained in (a) the Note and (b) all and any of the documents other than the Note or this Mortgage now or hereafter executed by Mortgagor and/or others and by or in favor of Mortgagee, which wholly or partially secure or guaranty payment of the Note (collectively, the "**Other Security Documents**", and together with the Note and Mortgage, collectively, the "**Loan Documents**"), are hereby made a part of this Mortgage to the same extent and with the same force as if fully set forth herein.

Notwithstanding anything to the contrary, all payments due under the Note, this Mortgage and the Other Security Documents shall be made by means of wire transfer to the order of Mortgagee, as directed by Mortgagee, and Mortgagee shall have the absolute right to reject any payment not made by wire transfer.

### SECTION 2.  Application of Payments.

Unless applicable law provides otherwise, all payments received by Mortgagee from Mortgagor under the Note or this Mortgage shall be applied by Mortgagee in the following order of priority: (i) late charges payable under the Note; (ii) interest payable on the Note; (iii) all applicable prepayment premiums, (iv) principal of the Note; (v) interest payable on advances made pursuant to Section 24 hereof; (vi) principal of advances made pursuant to Section 24 hereof; and (vii) any other sums secured by this Mortgage in such order as Mortgagee, at Mortgagee's option, may determine; provided, however, that Mortgagee may, at Mortgagee's option, apply any sums payable pursuant to Section 24 hereof prior to interest on and principal of the Note, but such application shall not otherwise affect the order of priority of application specified in this Section 2.

### SECTION 3.  Warranty of Title.

Mortgagor warrants that Mortgagor has good title to the Mortgaged Property and has the right to mortgage, give, grant, bargain, sell, alienate, enfeoff, convey, confirm, pledge, assign and hypothecate the same and that Mortgagor possesses an unencumbered fee estate in the

- 4 -

Premises and the Improvements and that it owns the Mortgaged Property free and clear of all liens, encumbrances and charges whatsoever except for those exceptions shown in the title insurance policy insuring the lien of this Mortgage. Mortgagor shall forever warrant, defend and preserve such title and the validity and priority of the lien of this Mortgage and shall forever warrant and defend the same to Mortgagee against the claims of all persons whomsoever.

### SECTION 4. **Insurance.**

(a)       Mortgagor will keep the Mortgaged Property insured against loss or damage by fire, flood (if in flood hazard area) and such other hazards, risks and matters, including, without limitation, business interruption, rental loss, builder's risk, terrorism, public liability, and boiler damage and liability, as Mortgagee may from time to time require in amounts required by Mortgagee, and shall pay the premiums for such insurance (collectively, the "**Insurance Premiums**") as the same become due and payable. All policies of insurance (collectively, the "**Policies**") shall be issued by insurers acceptable to Mortgagee and shall contain the standard New York mortgagee non-contribution clauses naming Mortgagee as the person to which all payments made by such insurance company shall be paid. Mortgagor will assign and deliver the Policies to Mortgagee. Not later than thirty (30) days prior to the expiration date of each of the Policies, Mortgagor will deliver evidence satisfactory to Mortgagee of the renewal of each of the Policies. Prior to or on the date hereof, Mortgagor shall deliver evidence satisfactory to Mortgagee that Mortgagor has paid for the Insurance Premiums covering the period commencing on the date hereof up to and including the Maturity Date, as such term is defined in the Note. All Policies shall be issued by companies approved by Mortgagee and licensed to do business in the state where the Mortgaged Property is located, with a claims paying ability rating of "BBB" or better by Standard & Poor's Ratings Services, a division of McGraw-Hill Companies, Inc. and a rating of "A:VII" or better in the current Best's Insurance Reports

(b)       In the event of loss, Mortgagor shall give immediate written notice to the insurance carrier and to Mortgagee. Mortgagor hereby authorizes and empowers Mortgagee as attorney-in-fact, coupled with an interest, for Mortgagor to make proof of loss, to adjust and compromise any claim under insurance policies, to appear in and prosecute any action arising from such insurance policies, to collect and receive insurance proceeds, and to deduct therefrom Mortgagee's expenses incurred in the collection of such proceeds (said insurance proceeds, after such deduction of expenses, being hereinafter the "**Net Proceeds**"); provided, however, that nothing contained in this subsection (b) shall require Mortgagee to incur any expense or take any action hereunder. Mortgagor further authorizes Mortgagee, at Mortgagee's option, either (i) to hold the Net Proceeds for the account of Mortgagor to be used to reimburse Mortgagor for the cost of reconstruction or repair of the Mortgaged Property (hereinafter, the "**Restoration**") or (ii) to apply the Net Proceeds to the payment of the sums secured by this Mortgage, whether or not then due, in such priority and proportions as Mortgagee in its discretion shall deem proper, but any such repayment shall not be deemed voluntary prepayment for which a prepayment premium is due.

(c)       If the Net Proceeds are applied to the payment of the sums secured by this Mortgage, any such application of proceeds to principal shall neither, extend or postpone the due dates of the monthly installments to be made pursuant to the Note, nor shall such application change the amounts of such installments. If the Mortgaged Property is sold pursuant to Section 23 hereof or if Mortgagee acquires title to the Mortgaged Property, Mortgagee shall have all of the

- 5 -

right, title and interest of Mortgagor in and to any insurance policies and unearned premiums thereon and in and to the proceeds resulting from any damage to the Mortgaged Property prior to such sale or acquisition.

(d)     The excess, if any, of the Net Proceeds remaining after payment of the entire Debt as provided herein shall be paid to Mortgagor.

(e)     Anything in this Section to the contrary notwithstanding in the event of a casualty resulting in damage to the Mortgaged Property, if Mortgagee in its sole discretion makes the Net Proceeds available for Restoration, same shall be made available in accordance with the terms and provisions set forth below and provided that:

> (i)     Mortgagor delivers to Mortgagee an opinion of an architect designated by Mortgagor and satisfactory to Mortgagee (the "**Supervising Architect**"), together with such other documentation as Mortgagee may request, evidencing to the satisfaction of Mortgagee that the Restoration of the Mortgaged Property may be completed so as to constitute an architecturally whole and economically feasible building at least equal in value and condition to the Mortgaged Property immediately prior to the casualty;

> (ii)     no Event of Default has occurred and is continuing hereunder and no default has otherwise occurred under the terms of this Mortgage, the Note, or any of the Other Security Documents which remains uncured beyond the applicable notice and/or grace period;

> (iii)     in the event the Net Proceeds are not sufficient in Mortgagee's reasonable opinion to pay in full the Restoration (hereinafter referred to as the "**Work**"), Mortgagor shall deposit with Mortgagee sufficient funds, if necessary in the reasonable opinion of Mortgagee, such that together with the Net Proceeds, sufficient funds shall be readily available for the Restoration of the Mortgaged Property as nearly as practicable to its value and condition immediately prior to such casualty;

> (iv)     Mortgagor delivers to Mortgagee complete plans and specifications (the "**Work Plans and Specs**") for the work to be performed in connection with the Restoration prepared and sealed by an architect reasonably satisfactory to Mortgagee with evidence satisfactory to Mortgagee of the approval of the Work Plans and Specs by all governmental authorities whose approval is required;

> (v)     Mortgagor delivers to Mortgagee, in the event that the Work Plans and Specs are prepared by an architect other than the Supervising Architect, written approval of the Work Plans and Specs by the Supervising Architect;

> (vi)     Mortgagor delivers to Mortgagee a signed estimate approved in writing by the Supervising Architect, bearing the Supervising Architect's seal, stating the entire cost of completing the Work; and

- 6 -

(vii)    Mortgagor delivers to Mortgagee true copies certified by Mortgagor, or by the Supervising Architect or Mortgagor's general contractor or, if available, the governmental agency having jurisdiction thereof, of all permits and approvals required by law in connection with the commencement and conduct the Work.

(f)    If the Net Proceeds are made available for the Restoration of the Mortgaged Property pursuant to the terms of paragraph (e) above, the costs, if any, to Mortgagee of recovering or paying out such Net Proceeds (including reasonable attorneys' fees and disbursements and reasonable costs incurred by Mortgagee in having the Work inspected and the Work Plans and Specs reviewed by the Supervising Architect) shall be promptly paid to Mortgagee on demand. In the event that the terms and conditions of paragraph (e) above have been satisfied in full, then the Net Proceeds shall be disbursed by Mortgagee as the Work progresses in accordance with customary construction loan advance procedures.

(g)    Upon occurrence of an Event of Default under this Mortgage, or upon the failure by Mortgagor promptly to commence or diligently to continue the Work, Mortgagee may apply all or any portion of the Net Proceeds to the payment of the sums secured by this Mortgage, whether or not then due, in such priority and proportions as Mortgagee in its discretion shall deem proper.

(h)    If at any time the Net Proceeds which are to be applied to the Restoration of the Mortgaged Property will be insufficient, in the reasonable judgment of Mortgagee, to pay the entire unpaid cost of the Restoration, Mortgagor shall pay the deficiency, or make provision satisfactory to Mortgagee for the payment thereof, prior to receiving any part of the Net Proceeds. Any balance of the Net Proceeds not required for the Restoration, upon completion of the Work and the reimbursement of Mortgagor in full of the payment of the Work shall, at Mortgagee's option, (i) be retained by Mortgagee and applied to the sums secured by this Mortgage, whether or not then due without premium or penalty, or (ii) be returned to Mortgagor.

**NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN OR IN SECTION 254 OF THE REAL PROPERTY LAW OF THE STATE OF NEW YORK OR ANY OTHER PROVISION OF APPLICABLE LAW, THE PROCEEDS OF INSURANCE POLICIES COMING INTO THE POSSESSION OF MORTGAGEE SHALL NOT BE DEEMED TRUST FUNDS AND MORTGAGEE SHALL BE ENTITLED TO DISPOSE OF SUCH FUNDS AS PROVIDED HEREIN.**

### SECTION 5.  **Payment of Taxes, etc.**

Mortgagor shall pay all taxes, assessments, water rates, frontage charges and sewer rents, now or hereafter levied or assessed or imposed against the Mortgaged Property or any part thereof (collectively, the "**Taxes**") and all ground rents, maintenance charges, other governmental impositions and other charges, including, without limitation, vault charges and license fees for the use of vaults, chutes and similar areas adjoining the Premises, now or hereafter levied or assessed or imposed against the Mortgaged Property or any part thereof (collectively, the "**Other Charges**") as same become due and payable. Mortgagor will deliver to Mortgagee, promptly upon Mortgagee's request, evidence satisfactory to Mortgagee that the Taxes and Other Charges have

- 7 -

been so paid or are not then delinquent.  Mortgagor shall not suffer and shall promptly cause to be paid and discharged any lien or charge whatsoever which may be or become a lien or charge against the Mortgaged Property, and shall promptly pay for all utility services provided to the Mortgaged Property.  Mortgagor shall furnish to Mortgagee receipts for the payment of the Taxes, Other Charges and said utility services prior to the date the same shall become delinquent.

SECTION 6.  **Intentionally Omitted.**

SECTION 7.  **Condemnation.**

(a)  Mortgagor shall promptly notify Mortgagee of any action or proceeding relating to any condemnation or other taking, whether direct or indirect, of the Mortgaged Property or any part thereof, and Mortgagor shall appear in and prosecute any such action or proceeding unless otherwise directed by Mortgagee in writing.  Mortgagor authorizes Mortgagee, at Mortgagee's option, as attorney-in-fact, coupled with an interest, for Mortgagor, to commence, appear in and prosecute, in Mortgagee's or Mortgagor's name, any action or proceeding relating to any condemnation or other taking of the Mortgaged Property, whether direct or indirect, and to settle or compromise any claim in connection with such condemnation or other taking.  The proceeds of any award, payment or claim for damages, direct or consequential, in connection with any condemnation or other taking, whether direct or indirect, of the Mortgaged Property or any part thereof, or for conveyances in lieu of condemnation, are hereby assigned to and shall be paid to Mortgagee.

(b)  Mortgagor authorizes Mortgagee to apply such awards, payments, proceeds or damages, after the deduction of Mortgagee's expenses incurred in the collection of such amounts, at Mortgagee's option, either (i) to restoration or repair of the Mortgaged Property, or (ii) to payment of the sums secured by this Mortgage, whether or not then due, in the order of application set forth in Section 2 hereof, with the balance, if any, to Mortgagor. Mortgagor agrees to execute such further evidence of assignment of any awards, proceeds, damages or claims arising in connection with such condemnation or taking as Mortgagee shall require.

(c)  Notwithstanding any taking by any public or quasi-public authority through eminent domain or otherwise (including but not limited to any transfer made in lieu of or in anticipation of the exercise of such taking), Mortgagor shall continue to pay the Debt at the time and in the manner provided for its payment in the Note and in this Mortgage, and the Debt shall not be reduced until any award or payment therefor shall have been actually received and applied by Mortgagee, after the deduction of expenses of collection, to the reduction or discharge of the Debt.  Mortgagee shall not be limited to the interest paid on the award by the condemning authority but shall be entitled to receive out of the award interest at the rate or rates provided herein and in the Note.  Mortgagee may apply any such award or payment to the reduction or discharge of the Debt whether or not then due and payable.  Any reduction of the Debt pursuant to the terms of this Section 7 shall not be deemed a prepayment of the Debt and no prepayment consideration, if any, shall be due.  If the Mortgaged Property is sold, through foreclosure or otherwise, prior to the receipt by Mortgagee of such award or payment, Mortgagee shall have the right, whether or not a deficiency judgment on the Note shall have been sought, recovered or denied, to receive said award or payment, or a portion thereof sufficient to pay the Debt.

- 8 -

## SECTION 8.  **Leases and Rents.**

(a)     Mortgagor hereby absolutely and unconditionally assigns to Mortgagee all Leases now existing or hereafter made of all or any part of the Mortgaged Property, all Rents payable under such Leases, and all security deposits made by tenants in connection with such Leases. Mortgagor hereby grants Mortgagee all of the rights and powers possessed by Mortgagor prior to such assignment, and Mortgagee is hereby granted the right to modify, extend or terminate the Leases and to execute new Leases, in Mortgagee's sole discretion. Mortgagee is hereby granted and assigned by Mortgagor the right to enter the Mortgaged Property for the purpose of enforcing its interest in the Leases and the Rents, this Mortgage constituting a present, absolute assignment of the Leases and the Rents. Nevertheless, subject to the terms of this Section 8, Mortgagee grants to Mortgagor a revocable license to operate and manage the Mortgaged Property and to collect the Rents, provided, however, that Mortgagor shall not modify, extend or terminate any Leases, or execute any new Leases without first obtaining Mortgagee's prior written consent. Mortgagor shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Debt, for use in the payment of such sums. Upon or at any time after an Event of Default, the license granted to Mortgagor herein may be revoked by Mortgagee, and Mortgagee may enter upon the Mortgaged Property, and collect, retain and apply the Rents toward payment of the Debt in such priority and proportions as Mortgagee in its discretion shall deem proper.

(b)     All Leases shall be written on the standard form of lease which standard form of lease shall be presented to Mortgagee for approval. Upon request, Mortgagor shall furnish Mortgagee with executed copies of all Leases and relevant documentation required to be filed with all Federal, State and City housing authorities and agencies.   No changes may be made to the Mortgagee-approved standard lease without the prior written consent of Mortgagee.  In addition, all renewals of Leases and all proposed Leases shall provide for rental rates comparable to existing local market rates, which, in the case of residential Leases, shall not be in excess of the local registered rent for the apartment to which the Lease relates, and shall be arms-length transactions. All proposed Leases shall be subject to the prior approval of the Mortgagee.  All Leases shall provide that they are subordinate to this Mortgage and that the lessee agrees to attorn to Mortgagee. Mortgagor (i) shall observe and perform all the obligations imposed upon the lessor under the Leases and shall not do or permit to be done anything to impair the value of the Leases as security for the Debt; (ii) shall promptly send copies to Mortgagee of all notice of default which Mortgagor shall send or receive thereunder; (iii) shall enforce all of the terms, covenants and conditions contained in the Leases upon the part of the lessee thereunder to be observed or performed, short of termination thereof; (iv) shall not collect any of the Rents more than one (1) month in advance; (v) shall not execute any other assignment of lessor's interest in the Leases or the Rents; (vi) shall not alter, modify or change the terms of the Leases without the prior written consent of Mortgagee, or cancel or terminate the Leases or accept a surrender thereof or convey or transfer or suffer or permit a conveyance or transfer of the Premises or of any interest therein so as to effect a merger of the estates and rights of, or a termination or diminution of the obligations of, lessees thereunder; (vii) shall not alter, modify or change the terms of any guaranty of the Leases or cancel or terminate such guaranty without the prior written consent of Mortgagee; (viii) shall not consent to any assignment of or subletting under the Leases not in accordance with their terms, without the prior written consent of Mortgagee; and (ix) shall execute and deliver at the request of Mortgagee all such further assurances, confirmations and assignments in connection with the Mortgaged Property as Mortgagee shall from time to time require.  Mortgagee shall have all of the rights

- 9 -

against lessees of the Mortgaged Property set forth in Section 291-F of the Real Property Law of New York.

## SECTION 9.   **Maintenance of Mortgaged Property.**

Mortgagor shall cause the Mortgaged Property to be maintained in a good and safe condition and repair.  The Improvements and the Equipment shall not be removed, demolished or altered (except for normal replacement of the Equipment) without the consent of Mortgagee.  Mortgagor shall promptly comply with all laws, orders and ordinances affecting the Mortgaged Property or the use thereof.  Mortgagor shall promptly repair, replace or rebuild any part of the Mortgaged Property which may be destroyed by any casualty, or become damaged, worn or dilapidated, or which may be affected by any proceeding of the character referred to in Section 7 hereof and shall complete and pay for any structure at any time in the process of construction or repair on the Premises.  Mortgagor shall not initiate, join in, acquiesce in, or consent to any change in any private restrictive covenant, zoning law or other public or private restriction, limiting or defining the uses which may be made of the Mortgaged Property or any part thereof.  If under applicable zoning provisions the use of all or any portion of the Mortgaged Property is or shall become a nonconforming use, Mortgagor will not cause or permit such nonconforming use to be discontinued or abandoned without the express written consent of Mortgagee.

## SECTION 10. **Transfer or Encumbrance of the Mortgaged Property.**

(a)      Mortgagor acknowledges that Mortgagee has examined and relied on the creditworthiness of Mortgagor and experience of Mortgagor in owning and operating properties such as the Mortgaged Property in agreeing to make the loan secured hereby, and that Mortgagee will continue to rely on Mortgagor's ownership of the Mortgaged Property as a means of maintaining the value of the Mortgaged Property as security for repayment of the Debt. Mortgagor acknowledges that Mortgagee has a valid interest in maintaining the value of the Mortgaged Property so as to ensure that, should Mortgagor default in the repayment of the Debt, Mortgagee can recover the Debt by a sale of the Mortgaged Property. Mortgagor shall not, without the prior written consent of Mortgagee, which consent may be withheld in Mortgagee's sole discretion, have the right to sell, transfer, convey, alienate, mortgage, encumber, pledge or otherwise transfer the Mortgaged Property or any part thereof or permit the Mortgaged Property or any part thereof to be sold, conveyed, alienated, mortgaged, encumbered, pledged or otherwise transferred.

(b)      A sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer within the meaning of this Section 10 shall be deemed to include (i) an installment sales agreement wherein Mortgagor agrees to sell the Mortgaged Property or any part thereof for a price to be paid in installments; (ii) an agreement by Mortgagor leasing all or a substantial part of the Mortgaged Property for other than actual occupancy by a space tenant thereunder or a sale, assignment or other transfer of, or the grant of a security interest in, Mortgagor's right, title and interest in and to any Leases or any Rents; (iii) if Mortgagor, any Guarantor (hereinafter defined), or any general partner of Mortgagor or Guarantor is a corporation, the voluntary or involuntary sale, conveyance or transfer of such corporation's stock (or an interest in any entity directly or indirectly controlling such corporation by operation of law or otherwise) or the creation or issuance of new stock by which any of such corporation's stock shall be vested in a party or parties who are not now stockholders; (iv) if Mortgagor, any Guarantor or any general partner of Mortgagor or any

- 10 -

Guarantor is a limited or general partnership or joint venture, the change, removal or resignation of a general partner or managing partner or the transfer of the partnership interest of any general partner or managing partner; and (v) if Mortgagor, any Guarantor or any member of Mortgagor or any Guarantor is a limited liability company, the change, removal or resignation of a member or manager or the transfer of an interest of any member or manager.

       (c)    Mortgagee reserves the right to condition the consent required hereunder upon a modification of the terms hereof and on assumption of this Mortgage as so modified by the proposed transferee, payment of a transfer fee, or such other conditions as Mortgagee shall determine in its sole discretion to be in the interest of Mortgagee. Mortgagee shall not be required to demonstrate any actual impairment of its security or any increased risk of default hereunder in order to declare the Debt immediately due and payable upon Mortgagor's sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property without Mortgagee's consent. This provision shall apply to every sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property regardless of whether voluntary or not, or whether or not Mortgagee has consented to any previous sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property.

## SECTION 11. **Estoppel Certificates.**

       (a)    After request by Mortgagee, Mortgagor, within ten (10) days, shall furnish Mortgagee or those making requests by or on behalf of or through Mortgagee with a statement, duly acknowledged and certified, setting forth (i) the amount of the original principal amount of the Note, (ii) the unpaid principal amount of the Note, (iii) the rate of interest of the Note, (iv) the date installments of interest and/or principal were last paid, (v) any offsets or defenses to the payment of the Debt, if any, and (vi) that the Note and this Mortgage are valid, legal and binding obligations and have not been modified or if modified, giving particulars of such modification.

       (b)    After request by Mortgagee, Mortgagor, within ten (10) days, will furnish Mortgagee with estoppel certificates from any lessees under the Leases as required by their respective Leases.

## SECTION 12. **Changes in the Laws Regarding Taxation.**

       If any law is enacted or adopted or amended after the date of this Mortgage which deducts the Debt from the value of the Mortgaged Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Mortgagee's interest in the Mortgaged Property, Mortgagor will pay such tax, with interest and penalties thereof, if any. In the event Mortgagee is advised by counsel chosen by it that the payment of such tax or interest and penalties by Mortgagor would be unlawful or taxable to Mortgagee or unenforceable or provide the basis for a defense of usury, then in any such event, Mortgagee shall have the option, by written notice of not less than ninety (90) days, to declare the Debt immediately due and payable.

## SECTION 13. **No Credits on Account of the Debt.**

       Mortgagor will not claim or demand or be entitled to any credit or credits on account of the Debt for any part of the Taxes or Other Charges assessed against the Mortgaged Property, or any part thereof, and no deduction shall otherwise be made or claimed from the

assessed value of the Mortgaged Property, or any part thereof, for real estate tax purposes by reason of this Mortgage or the Debt. In the event such claim, credit or deduction shall be required by law, Mortgagee shall have the option, by written notice of not less than ninety (90) days, to declare the Debt immediately due and payable.

## SECTION 14. **Documentary Stamps.**

If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note or this Mortgage, or impose any other tax or charge on the same, Mortgagor will pay for the same, with interest and penalties thereon, if any.

## SECTION 15. **Usury Laws.**

This Mortgage and the Note are subject to the express condition that at no time shall Mortgagor be obligated or required to pay interest on the Debt at a rate which could subject the holder of the Note to either civil or criminal liability as a result of being in excess of the maximum interest rate which Mortgagor is permitted by applicable law to contract or agree to pay. If by the terms of either this Mortgage or the Note, Mortgagor is at any time required or obligated to pay interest on the Debt at a rate in excess of such maximum rate, the rate of interest under the same shall be deemed to be immediately reduced to such maximum rate and the interest payable shall be computed at such maximum rate and all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of the principal balance of the Note.

## SECTION 16. **Books and Records.**

(a)     The Mortgagor (and Guarantors, if any) shall keep proper books, records and accounts with respect to the operation of the Mortgaged Property in accordance with generally accepted accounting principles and shall furnish to the Mortgagee (i) within ninety (90) days after the end of each fiscal year of Mortgagor and at any other time upon Mortgagee's request, financial statements for the operation of the Mortgaged Property, including a balance sheet, a statement of income and expenses of the Mortgaged Property and a statement of changes in financial position, each in reasonable detail and certified by Mortgagor (or a principal of Mortgagor if Mortgagor is not an individual) under penalty of perjury, to be true and complete, and, if Mortgagee shall require audited by an independent certified public accountant; (ii) within thirty (30) days following the close of each calendar quarter, quarter-annual financial statements (including a certified rent roll) in form satisfactory to the Mortgagee, which shall disclose in reasonable detail all earnings and expenses with respect to the operation of the Mortgaged Property certified by Mortgagor (or a principal of Mortgagor if Mortgagor is not an individual) under penalty of perjury, to be true and complete; (iii) together with the foregoing financial statements and at any other time upon Mortgagee's request, a rent schedule for the Mortgaged Property in form acceptable to Mortgagee, certified by Mortgagor (or a principal of Mortgagor if Mortgagor is not an individual) under penalty of perjury, to be true and complete, showing the name of each tenant, the space occupied, the Lease expiration date, the rent payable, the rent paid and any other information requested by Mortgagee; (iv) upon Mortgagee's request, financial statements for any principal of Mortgagor and Guarantor in the form set forth above; (v) upon Mortgagee's request, an accounting of all

security deposits held in connection with any Lease of any part of the Mortgaged Property, including the name and identification number of the accounts in which such security deposits are held, name and address of the financial institutions in which such security deposits are held and the name of the person to contact at such financial institutions, along with any authority or release necessary for Mortgagee to obtain information regarding such accounts directly from such financial institutions; and (vi) such other financial information as Mortgagee may request.

(b)     Upon the death of any Guarantor who is an individual, Mortgagor shall give prompt written notice to Mortgagee (i.e., at least within thirty (30) days following his or her death), setting forth the date of death, the state and county where the deceased Guarantor's estate is being administered, and, if then known, the name(s) and address(es) of the executor(s) or administrator(s) appointed to administer the estate of such deceased Guarantor.

### SECTION 17. **Performance of Other Agreements.**

Mortgagor shall observe and perform each and every term to be observed or performed by Mortgagor pursuant to the terms of any agreement or recorded instrument affecting or pertaining to the Mortgaged Property.

### SECTION 18. **Further Acts, etc.**

Mortgagor will, at the cost of Mortgagor, and without expense to Mortgagee, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfers and assurances as Mortgagee shall, from time to time, require, for the better assuring, conveying, assigning, transferring, and confirming unto Mortgagee the property and rights hereby mortgaged, given, granted, bargained, sold, alienated, conveyed, confirmed, pledged, assigned and hypothecated or intended now or hereafter so to be, or which Mortgagor may be or may hereafter become bound to convey or assign to Mortgagee, or for carrying out the intention or facilitating the performance of the terms of this Mortgage or for filing, registering or recording this Mortgage. Mortgagor, on demand, will execute and deliver and hereby authorizes Mortgagee to execute in the name of Mortgagor or without the signature of Mortgagor to the extent Mortgagee may lawfully do so, one or more financing statements, chattel mortgages or other instruments, to evidence more effectively the security interest of Mortgagee in the Mortgaged Property. Mortgagor grants to Mortgagee an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Mortgagee at law and in equity, including without limitation such rights and remedies available to Mortgagee pursuant to this Section 18.

### SECTION 19. **Recording of This Mortgage, etc.**

Mortgagor forthwith upon the execution and delivery of this Mortgage and thereafter, from time to time, will cause this Mortgage, and any security instrument creating a lien or security interest or evidencing the lien hereof upon the Mortgaged Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect the lien or security interest hereof upon, and the interest of Mortgagee in, the Mortgaged Property. Mortgagor will pay all filing, registration or recording fees, and all expenses (including, but not

- 13 -

limited to, attorney's fees) incident to the preparation, execution and acknowledgement of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Mortgaged Property, and any instrument of further assurance, and all federal, state, county and municipal, taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Mortgaged Property or any instrument of further assurance, except where prohibited by law so to do. Mortgagor shall hold harmless and indemnify Mortgagee, its successors and assigns, against any liability incurred by reason of the imposition of any tax on the making and recording of this Mortgage.

### SECTION 20. **Prepayment.**

The Debt may not be prepaid in whole or in part except in accordance with the terms and conditions contained in the Note.

### SECTION 21. **Events of Default.**

The Debt shall become immediately due and payable at the option of Mortgagee upon any one or more of the following events (each being an "**Event of Default**", and, collectively, "**Events of Default**"):

(a) if any portion of the Debt is not paid when the same is due and payable such failure continues for more than ten (10) days after the date such payment was due and payable without notice or demand;

(b) if any of the Taxes or Other Charges are not paid when the same are due and payable;

(c) if the Policies are not kept in full force and effect, or if the Policies are not assigned and delivered to Mortgagee upon request;

(d) if Mortgagor violates or does not comply with any of the provisions of Sections 3, 7, 8, 9, 10, 11, 14, 19, 35 or 36;

(e) if any representation or warranty of Mortgagor, or of any person guaranteeing payment of the Debt or any portion thereof or performance by Mortgagor of any of the terms of this Mortgage (a "**Guarantor**"), made herein or in any such guaranty, or in any certificate, report, financial statement or other instrument or document furnished to Mortgagee shall have been false or misleading in any material respect when made;

(f) if Mortgagor or any Guarantor shall make an assignment for the benefit of creditors or if Mortgagor shall generally not be paying its debts as they become due;

(g) if a receiver, liquidator or trustee of Mortgagor or of any Guarantor shall be appointed or if Mortgagor or any Guarantor shall be adjudicated a bankrupt or insolvent, or if any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, shall be filed by or against, consented to, or acquiesced in by, Mortgagor or any Guarantor or if any proceeding for the dissolution or liquidation of Mortgagor

- 14 -

or of any Guarantor shall be instituted; however, if such appointment, adjudication, petition or proceeding was involuntary and not consented to by Mortgagor or such Guarantor, upon the same not being discharged, stayed or dismissed within thirty (30) days;

(h)     if Mortgagor shall be in default under any other mortgage or security agreement covering any part of the Mortgaged Property, whether it be superior or junior in lien to this Mortgage, beyond any applicable grace, notice and/or cure periods;

(i)     if the Mortgaged Property becomes subject to any mechanic's, materialman's liens or other lien other than a lien for local real estate taxes and assessments not then due and payable and such lien shall remain undischarged of record (by payment, bonding or otherwise) within ten (10) days;

(j)     if Mortgagor fails to cure promptly any violations of laws or ordinances affecting or which may be interpreted to affect the Mortgaged Property;

(k)     if Mortgagor shall be in default under any other term, covenant or condition of the Note, this Mortgage or the Other Security Documents;

(l)     if Mortgagor causes the Premises to be used as collateral for any additional financing not set forth hereunder;

(m)     if Guarantor or any member of Mortgagor is arrested in connection with a felony criminal offense;

(n)     if an Event of Default occurs under the Other Loan Documents, as such term is defined herein; and

(o)     except as permitted in this Mortgage, the actual or threatened alteration, improvement, demolition or removal of any of the Improvements without the prior consent of Mortgagee.

## SECTION 22. **Remedies of Mortgagee.**

Upon the occurrence of any Event of Default, (a) Mortgagor will pay, from the date of that Event of Default, and until the entire Debt is paid in full, whether prior to or subsequent to the entry of a judgment of foreclosure and sale and the satisfaction of any deficiency judgment, interest on the unpaid principal balance of the Note at the rate of Twenty-Four (24%) percent per annum or at the maximum interest rate which Mortgagor may by law pay, whichever is lower, (the "**Default Rate**"); and (b) Mortgagee may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Mortgagor and in and to the Mortgaged Property by Mortgagee itself or otherwise, including, without limitation, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Mortgagee may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Mortgagee:

(i)     declare the entire Debt to be immediately due and payable;

(ii)    institute a proceeding or proceedings, judicial or nonjudicial, by advertisement or otherwise, for the complete foreclosure of this Mortgage in which case the Mortgaged Property or any interest therein may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner; notwithstanding the foregoing, upon default of the Mortgage or the Note, or other obligation secured thereby, Mortgagee shall have the right to sell the Premises by power of sale hereby granted pursuant to Article 14 of the New York Real Property Actions and Proceedings Law or any other statute authorizing nonjudicial foreclosure.

(iii)   with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Mortgage for the portion of the Debt then due and payable, subject to the continuing lien of this Mortgage for the balance of the Debt not then due;

(iv)    sell for cash or upon credit the Mortgaged Property or any part thereof and all estate, claim, demand, right, title and interest of Mortgagor therein and rights of redemption thereof, pursuant to the power of sale or otherwise, at one or more sales, as an entirety or in parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law;

(v)     institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, or in any of the Other Security Documents;

(vi)    recover judgment on the Note either before, during or after any proceedings for the enforcement of this Mortgage;

(vii)   apply for the appointment of a trustee, receiver, liquidator or conservator of the Mortgaged Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of the Mortgagor, any Guarantor or of any person, firm or other entity liable for the payment of the Debt;

(viii)  enforce Mortgagee's interest in the Leases and Rents and enter into or upon the Mortgaged Property, either personally or by its agents, nominees or attorneys and dispossess Mortgagor and its agents and servants therefrom, and thereupon Mortgagee may (A) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Mortgaged Property and conduct the business thereat; (B) complete any construction on the Mortgaged Property in such manner and form as Mortgagee deems advisable;

(C) make alterations, additions, renewals, replacements and improvements to or on the Mortgaged Property; (D) exercise all rights and powers of Mortgagor with respect to the Mortgaged Property, whether in the name of Mortgagor or otherwise, including, without limitation, the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents; and (E) apply the receipts from the Mortgaged Property to the payment of Debt, after deducting therefrom all expenses (including, without limitation, reasonable attorneys' fees and disbursements) incurred in connection with the aforesaid operations and all amounts necessary to pay the taxes, assessments insurance and other charges in connection with the Mortgaged Property, as well as just and reasonable compensation for the services of Mortgagee, its counsel, agents and employees; or

(ix)     pursue such other rights and remedies as may be available at law or in equity or under the Uniform Commercial Code.

In the event of a sale, by foreclosure or otherwise, of less than all of the Mortgaged Property, this Mortgage shall continue as a lien on the remaining portion of the Mortgaged Property.

(c)     The proceeds of any sale made under or by virtue of this paragraph, together with any other sums which then may be held by Mortgagee under this Mortgage, whether under the provisions of this paragraph or otherwise, shall be applied by Mortgagee to the payment of the Debt in such priority and proportion as Mortgagee in its sole discretion shall deem proper.

(d)     Mortgagee may adjourn from time to time any sale by it to be made under or by virtue of this Mortgage by announcement at the time and place appointed for such sale or for such adjourned sale or sales; and, except as otherwise provided by any applicable provision of law, Mortgagee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

(e)     Upon the completion of any sale or sales pursuant hereto in accordance with all applicable laws, Mortgagee, or an officer of any court empowered to do so, shall execute and deliver to the accepted purchaser or purchasers a good and sufficient instrument, or good and sufficient instruments, conveying, assigning and transferring all estate, right, title and interest in and to the property and rights sold. Any sale or sales made under or by virtue of this paragraph, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of Mortgagor in and to the properties and rights so sold, and shall be a perpetual bar both at law and in equity against Mortgagor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under Mortgagor.

(f)     Upon any sale made under or by virtue of this paragraph, whether made under a power of sale or under or by virtue of judicial proceedings or of a judgment or decree

- 17 -

of foreclosure and sale, Mortgagee may bid for and acquire the Mortgaged Property or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting upon the Debt the net sales price after deducting therefrom the expenses of the sale and costs of the action and any other sums which Mortgagee is authorized to deduct under this Mortgage and the Other Security Documents.

(g)     No recovery of any judgment by Mortgagee and no levy of an execution under any judgment upon the Mortgaged Property or upon any other property of Mortgagor shall affect in any manner or to any extent the lien of this Mortgage upon the Mortgaged Property or any part thereof, or any liens, rights, powers or remedies of Mortgagee hereunder, but such liens, rights, powers and remedies of Mortgagee shall continue unimpaired as before.

(h)     Mortgagee may terminate or rescind any proceeding or other action brought in connection with its exercise of the remedies provided in this paragraph at any time before the conclusion thereof, as determined in Mortgagee's sole discretion and without prejudice to Mortgagee.

(i)     Mortgagee may resort to any remedies and the security given by the Note, this Mortgage or in any of the Other Security Documents in whole or in part, and in such portions and in such order as determined by Mortgagee's sole discretion.  No such action shall in any way be considered a waiver of any rights, benefits or remedies evidenced or provided by the Note, this Mortgage or in any of the Other Security Documents.  The failure of Mortgagee to exercise any right, remedy or option provided in the Note, this Mortgage or any of the other Other Security Documents shall not be deemed a waiver of such right, remedy or option or of any covenant or obligation secured by the Note, this Mortgage or any of the Other Security Documents.  No acceptance by Mortgagee of any payment after the occurrence of any Event of Default and no payment by Mortgagee of any obligation for which Mortgagor is liable hereunder shall be deemed to waive or cure any Event of Default with respect to Mortgagor, or Mortgagor's liability to pay such obligation.  No sale of all or any portion of the Mortgaged Property, no forbearance on the part of Mortgagee, and no extension of time for the payment of the whole or any portion of the Debt or any other indulgence given by Mortgagee to Mortgagor, shall operate to release or in any manner affect the interest of Mortgagee in the remaining Mortgaged Property or the liability of Mortgagor to pay the Debt.  No waiver by Mortgagee shall be effective unless it is in writing and then only to the extent specifically stated.  All costs and expenses of Mortgagee in exercising its rights and remedies under this Paragraph 22 (including, without limitation, reasonable attorneys' fees and disbursements to the extent permitted by law), shall be paid by Mortgagor immediately upon notice from Mortgagee, with interest at the Default Rate for the period after notice from Mortgagee and such costs and expenses shall constitute a portion of the Debt and shall be secured by this Mortgage.

(j)     The interests and rights of Mortgagee under the Note, this Mortgage or any of the Other Security Documents shall not be impaired by any indulgence, including, without limitation,  (i) any renewal, extension or modification which Mortgagee may grant with respect to any of the Debt, (ii) any surrender, compromise, release, renewal, extension, exchange or substitution which Mortgagee may grant with respect to the Mortgaged Property or any portion

- 18 -

thereof; or (iii) any release or indulgence granted to any maker, endorser, Guarantor or surety of any of the Debt.

## SECTION 23. **Sale of Mortgaged Property; Multiple Collateral.**

(a)     If the Mortgaged Property consists of two or more distinct parcels and this Mortgage is foreclosed, whether pursuant to the power of sale herein granted to Mortgagee, or otherwise, the Mortgaged Property, or any interest therein, may, at the discretion of Mortgagee, be sold in one or more parcels or in several interests or portions and in any order or manner as the Mortgagee may elect and specify in the notice of sale.

(b)     If the indebtedness secured by this Mortgage is also secured by one or more other mortgages on property consisting of more than one functionally separate and distinct property and an Event of Default occurs under this Mortgage or any such other mortgage which is cross-defaulted with this Mortgage, upon a foreclosure of this Mortgage and such other mortgages, whether pursuant to a power of sale or otherwise, the Mortgaged Property, or any interest therein, and the property encumbered by such other mortgages may, at the discretion of Mortgagee, be sold in the order designated by Mortgagee in the notice of sale.

## SECTION 24. **Right to Cure Defaults.**

Upon the occurrence of any Event of Default, or if Mortgagor fails to make any payment or to do any act as herein provided, Mortgagee may, but without any obligation hereunder, make or do the same in such manner and to such extent as Mortgagee may deem necessary to protect the security hereof. Mortgagee is authorized to enter upon the Mortgaged Property for such purposes, or appear in, defend, or bring any action or proceeding to protect its interest in the Mortgaged Property or to foreclose the Mortgage or collect the Debt, and the cost and expense thereof (including reasonable attorneys' fees to the extent permitted by law), with interest, shall constitute a portion of the Debt and shall be due and payable to Mortgagee upon demand. All such costs and expenses incurred by Mortgagee in remedying such Event of Default or in appearing in, defending, or bringing any such action or proceeding shall bear interest at the Default Rate, for the period from the date that such cost or expense was incurred by Mortgagee to the date of payment to Mortgagee, as provided in Section 22 hereof. All such costs and expenses incurred by Mortgagee together with interest thereon calculated at the Default Rate shall be deemed to constitute a portion of the Debt and be secured by this Mortgage and the Other Security Documents and shall be immediately due and payable upon demand by Mortgagee therefor.

## SECTION 25. **Late Payment Charge.**

If any portion of the Debt is not paid when due, and such failure continues for more than five (5) days after the date such payment was due and payable, Mortgagor shall pay to Mortgagee upon demand an amount equal to ten percent (10%) of such unpaid portion of the Debt, to defray the expense incurred by Mortgagee in handling and processing such delinquent payment and to compensate Mortgagee for the loss of the use of such delinquent payment, and such amount shall be secured by this Mortgage and the Other Security Documents.

Mortgagor shall make all payments required hereunder via "ACH" automatic debit. In the event that any such debit is rejected by the Mortgagor's selected financial institution, a fee of $100.00 for such rejection shall become immediately due and payable to Mortgagee.

## SECTION 26. **Prepayment After Event of Default.**

If following the occurrence of any Event of Default, Mortgagor shall tender payment of an amount sufficient to satisfy the Debt in whole or in part at any time prior to a foreclosure sale of the Mortgaged Property, and if at the time of such tender prepayment of the principal balance of the Note is not permitted by the Note, Mortgagor shall, in addition to the entire Debt, also pay to Mortgagee a sum equal to interest which would have accrued on the principal balance of the Note at the interest rate set forth in the Note from the date of such tender to the earlier of (i) the Maturity Date as defined in the Note, or (ii) the first day of the period during which prepayment of the principal balance of the Note would have been permitted together with a prepayment consideration equal to the prepayment consideration which would have been payable as of the first day of the period during which prepayment would have been permitted. If at the time of such tender prepayment of the principal balance of the Note is permitted, such tender by Mortgagor shall be deemed to be a voluntary prepayment of the principal balance of the Note, and Mortgagor shall, in addition to the entire Debt, also pay to Mortgagee the applicable prepayment consideration specified in the Note and this Mortgage.

## SECTION 27. **Intentionally Deleted.**

## SECTION 28. **Reasonable Use and Occupancy.**

In addition to the rights which Mortgagee may have herein, upon the occurrence of any Event of Default, Mortgagee, at its option, may require Mortgagor to pay monthly in advance to Mortgagee, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Mortgaged Property as may be occupied by Mortgagor or may require Mortgagor to vacate and surrender possession of the Mortgaged Property to Mortgagee or to such receiver and, in default thereof, Mortgagor may be evicted by summary proceedings or otherwise.

## SECTION 29. **Right of Entry.**

Mortgagee and its agents shall have the right to enter and inspect the Mortgaged Property at all times.

## SECTION 30. **Appointment of Receiver.**

Mortgagee, upon the occurrence of an Event of Default or in any action to foreclose this Mortgage or in any non-judicial foreclosure proceeding commenced pursuant to Article 14 of the Real Property Actions and Proceedings Law or upon the actual or threatened waste to any part of the Mortgaged Property, shall be entitled to the appointment of a receiver without notice and without regard to the value of the Mortgaged Property as security for the Debt, or the solvency or insolvency of any person liable for the payment of the Debt.

- 20 -

SECTION 31. **Security Agreement.**

This Mortgage is both a real property mortgage and a "security agreement" within the meaning of the UCC. The Mortgaged Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, including the Intangibles, of Mortgagor in the Mortgaged Property. Mortgagor, by executing and delivering this Mortgage, has granted and hereby grants to Mortgagee, as security for the Debt, a security interest in the Mortgaged Property to the full extent that the Mortgaged Property may be subject to the UCC (said portion of the Mortgaged Property so subject to the UCC being called in this Section 30 the "**Collateral**"). If an Event of Default shall occur, Mortgagee, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the UCC, including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Mortgagee may deem necessary for the care, protection and preservation of the Collateral. Upon request or demand of Mortgagee, Mortgagor shall at its expense assemble the Collateral and make it available to Mortgagee at a convenient place acceptable to Mortgagee. Mortgagor shall pay to Mortgagee on demand any and all expenses, including legal expenses and attorneys' fees, incurred or paid by Mortgagee in protecting its interest in the Collateral and in enforcing its rights hereunder with respect to the Collateral. Any notice of sale, disposition or other intended action by Mortgagee with respect to the Collateral sent to Mortgagor in accordance with the provisions hereof at least five (5) days prior to such action, shall constitute commercially reasonable notice to Mortgagor. The proceeds of any disposition of the Collateral, or any part thereof, may be applied by Mortgagee to the payment of the Debt in such priority and proportions as Mortgagee in its discretion shall deem proper.

Mortgagor hereby gives to Mortgagee a continuing lien on, security interest in and right of set-off against all moneys, securities and other property of Mortgagor and the proceeds thereof, now on deposit or now or hereafter delivered, remaining with or in transit in any manner to Mortgagee, its correspondents, participants or its agents from or for Mortgagor, whether for safekeeping, custody, pledge, transmission, collection or otherwise or coming into possession of Mortgagee in any way, and also, any balance of any individual deposit account and credits of Mortgagor with, and any and all claims of Mortgagor against Mortgagee, at any time existing, as collateral security for the payment of the Debt and all of the other obligations of the Mortgagor under this Mortgage, including fees, contracted with or acquired by Mortgagee, whether joint, several, absolute, contingent, secured, matured or unmatured (for the purposes of this Section 30, collectively, the "**Liabilities**"), hereby authorizing Mortgagee at any time or times, without prior notice, to apply such balances, credits or claims, or any part thereof, to the Liabilities in such amounts as it may select, whether contingent, unmatured or otherwise, and whether any collateral security therefor is deemed adequate or not. The collateral security described herein shall be in addition to any collateral security described in any separate agreement executed in connection with this Mortgage.

SECTION 32. **Actions and Proceedings.**

Mortgagee has the right to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to bring any action or proceeding, in the name and on behalf of Mortgagor, which Mortgagee, in its discretion, decides should be brought to protect its

interest in the Mortgaged Property.  Mortgagee shall, at its option, be subrogated to the lien of any mortgage or other security instrument discharged in whole or in part by the Debt, and any such subrogation rights shall constitute additional security for the payment of the Debt.

### SECTION 33. Waiver of Jury Trial and Counterclaim.

MORTGAGOR, TO THE FULL EXTENT PERMITTED BY LAW, DOES HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FORGOES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO THIS AGREEMENT OR ANY CONDUCT, ACT OR OMISSION OF MORTGAGEE OR MORTGAGOR, OR ANY OF THEIR DIRECTORS, OFFICERS, PARTNERS, MEMBERS, EMPLOYEES, AGENTS OR ATTORNEYS, OR ANY OTHER PERSONS AFFILIATED WITH MORTGAGEE OR MORTGAGOR, IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.  MORTGAGOR HEREBY WAIVES THE RIGHT TO ASSERT A COUNTERCLAIM IN ANY ACTION OR PROCEEDING BROUGHT AGAINST IT BY MORTGAGEE,

### SECTION 34. Marshalling and Other Matters.

Mortgagor hereby waives, to the extent permitted by law, the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Mortgaged Property or any part thereof or any interest therein.  Further, Mortgagor hereby expressly waives any and all rights of redemption from sale under any order or decree of foreclosure of the Mortgage on behalf of Mortgagor, and on behalf of each and every person acquiring any interest in or title to the Mortgaged Property subsequent to the date of this Mortgage and on behalf of all persons to the extent permitted by applicable law.

### SECTION 35. Recovery of Sums Required To Be Paid.

Mortgagee shall have the right from time to time to take action to recover any sum or sums which constitute a part of the Debt as the same become due, without regard to whether or not the balance of the Debt shall be due, and without prejudice to the right of Mortgagee thereafter to bring an action of foreclosure, or any other action, for a default or defaults by Mortgagor existing at the time such earlier action was commenced.

### SECTION 36. Hazardous Materials.

Mortgagor represents and warrants that, to the best of Mortgagor's knowledge, after due inquiry and investigation, (a) there are no "Hazardous Materials" (as such quoted term is hereinafter defined) on the Mortgaged Property, and (b) no owner or occupant nor any prior owner or occupant of the Mortgaged Property has received any notice or advice from any governmental agency or any source whatsoever with respect to Hazardous Materials on, from or affecting the Mortgaged Property.  Mortgagor covenants that the Mortgaged Property shall be kept free of Hazardous Materials, and neither Mortgagor nor any occupant of the Mortgaged Property shall use, transport, store, dispose of or in any manner deal with Hazardous Materials on the Mortgaged

- 22 -

Property. Mortgagor shall comply with, and ensure compliance by all occupants of the Mortgaged Property with, all applicable federal, state and local laws, ordinances, rules and regulations, and shall keep the Mortgaged Property free and clear of any liens imposed pursuant to such laws, ordinances, rules and regulations. In the event that Mortgagor receives any notice or advice from any governmental agency or any source whatsoever with respect to Hazardous Materials on, from or affecting the Mortgaged Property, Mortgagor shall immediately notify Mortgagee. Mortgagor shall conduct and complete all investigations, studies, sampling, and testing, and all remedial actions necessary to clean up and remove all Hazardous Materials from the Mortgaged Property in accordance with all applicable federal, state and local laws, ordinances, rules and regulations. The term "**Hazardous Materials**" as used in this Mortgage shall include, without limitation, asbestos, gasoline, petroleum products, explosives, radioactive materials, polychlorinated biphenyls or related or similar materials, or any other substance or material defined as a hazardous or toxic substance or material by any federal, state or local law, ordinance, rule or regulation. The obligations and liabilities of Mortgagor under this Section 35 shall survive any entry of a judgment of foreclosure or the delivery of a deed in lieu of foreclosure of this Mortgage.

### SECTION 37. **Indemnification.**

Mortgagor shall protect, defend, indemnify and save harmless Mortgagee from and against all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including without limitation reasonable attorneys' fees and expenses), imposed upon or incurred by or asserted against Mortgagee by reason of (a) ownership of this Mortgage, the Mortgaged Property or any interest therein or receipt of any Rents; (b) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Mortgaged Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (c) any use, nonuse or condition in, on or about the Mortgaged Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (d) any failure on the part of Mortgagor to perform or comply with any of the terms of this Mortgage; (e) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any part thereof; (f) the failure of any person to file timely with the Internal Revenue Service an accurate Form 1099-B, Statement for Recipients of Proceeds from Real Estate, Broker and Barter Exchange Transactions, which may be required in connection with this Mortgage, or to supply a copy thereof in a timely fashion to the recipient of the proceeds of the transaction in connection with which this Mortgage is made; (g) any claim for brokerage fees or other consideration from any broker in connection with the loan secured by this Mortgage, except to the extent, if any, Mortgagee may have agreed pursuant to a separate agreement to compensate the broker engaged by Mortgagor; (h) the presence, disposal, escape, seepage, leakage, spillage, discharge, emission, release, or threatened release of any Hazardous Materials, from, or affecting the Mortgaged Property or any other property; (i) any personal injury (including wrongful death) or property damage (real or personal) arising out of or related to such Hazardous Materials; (j) any lawsuit brought or threatened, settlement reached, or government order relating to such Hazardous Materials; or (k) any violation of laws, orders, regulations, requirements, or demands of government authorities, which are based upon or in any way related to such Hazardous Materials including, without limitation, the costs and expenses of any remedial action, attorney and consultant fees, investigation and laboratory fees, court costs, and litigation expenses. Any amounts payable to Mortgagee by reason of the application of this Section 36 shall become immediately due and shall bear interest at the Default Rate from the date

loss or damage is sustained by Mortgagee until paid. The obligations of Mortgagor under this Section 36 shall survive any termination, satisfaction, assignment, entry of judgment of foreclosure or delivery of a deed in lieu of foreclosure of this Mortgage.

## SECTION 38. **Notices.**

Except for any notice required under applicable law to be given in another manner, (a) any notice to Mortgagor, the Mortgagor's successors or assigns provided for in this Mortgage or in the Note or pursuant to Real Property Actions and Proceedings Law Article 14 in a proceeding to foreclose this Mortgage by power of sale shall be given in writing by mailing such notice by certified mail, return receipt requested, or by sending such notice by a recognized overnight courier with postage, freight and any other charges paid, with a receipt therefor, addressed to Mortgagor at Mortgagor's address stated herein or at such other address as Mortgagor may designate by notice to Mortgagee as provided herein, and (b) any notice to Mortgagee shall be given in writing by mailing such notice certified mail, return receipt requested, or by sending such notice by a recognized overnight courier, with postage, freight and other charges paid, with a receipt therefor, addressed to Mortgagee at Mortgagee's address stated herein or to such other address as Mortgagee may designate by notice to Mortgagor as provided herein, with a copy of same given in the manner herein provided to Weltz Kakos Gerbi Wolinetz Volynsky LLP, 9889 S Santa Monica Blvd, Suite 210, Beverly Hills, California 90212, Attention: Gabriel Michael Gerbi, Esq. Except for any notice deemed under applicable law to have been given at a different time, any notice provided for in this Mortgage shall be deemed to have been given to Mortgagor or Mortgagee on the earlier of (a) the second day after such notice is mailed or deposited with a courier in a manner designated herein or (b) the day such notice is actually received.

## SECTION 39. **Authority.**

(a)      Mortgagor (and the undersigned representative of Mortgagor, if any) has full power, authority and legal right to execute this Mortgage, and to mortgage, give, grant, bargain, sell, alienate, enfeoff, convey, confirm, pledge, hypothecate and assign the Mortgaged Property pursuant to the terms hereof and to keep and observe all of the terms of this Mortgage on Mortgagor's part to be performed.

(b)      Mortgagor represents and warrants that Mortgagor is not a "foreign person" within the meaning of 1445(f)(3) of the Internal Revenue Code of 1986, as amended and the related Treasury Department regulations, including temporary regulations.

## SECTION 40. **Consent to Jurisdiction.**

FOR ANY CLAIM, ACTION, OR DISPUTE ARISING UNDER, OR TO INTERPRET OR APPLY, THIS MORTGAGE, THE NOTE OR ANY OTHER SECURITY DOCUMENTS, OR TO RESOLVE ANY DISPUTE ARISING UNDER THE FOREGOING OR THE RELATIONSHIP BETWEEN THE PARTIES, MORTGAGOR IRREVOCABLY SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK AND THE UNITED STATES DISTRICT COURT LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK CITY, NEW YORK, AND APPELLATE COURTS FROM ANY OF SUCH COURTS. MORTGAGOR IRREVOCABLY WAIVES ANY

OBJECTION THAT IT MAY HAVE AT ANY TIME TO VENUE OF ANY SUCH SUIT, ACTION, OR PROCEEDING BROUGHT IN ANY SUCH COURT, INCLUDING ANY CLAIM THAT ANY SUCH SUIT, ACTION, OR PROCEEDING SO BROUGHT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. NOTHING IN THIS MORTGAGE, THE NOTE OR OTHER SECURITY DOCUMENTS SHALL BE DEEMED TO PRECLUDE MORTGAGEE FROM BRINGING ANY SUIT, ACTION, OR PROCEEDING RELATING TO THIS MORTGAGE, THE NOTE OR OTHER SECURITY DOCUMENTS OR THE DEBT IN ANY OTHER JURISDICTION WHERE MORTGAGEE COULD OTHERWISE PROPERLY BRING SUCH SUIT, ACTION, OR PROCEEDING. MORTGAGOR FURTHER CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY REGISTERED OR CERTIFIED U.S. MAIL, POSTAGE PREPAID, TO MORTGAGOR AT THE ADDRESS SET FORTH ON PAGE 1 HEREOF, AND CONSENTS AND AGREES THAT SUCH SERVICE SHALL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE (BUT NOTHING HEREIN SHALL AFFECT THE VALIDITY OR EFFECTIVENESS OF PROCESS SERVED IN ANY OTHER MANNER PERMITTED BY LAW).

### SECTION 41. **Participation/Assignment of Interests in this Mortgage.**

Mortgagor acknowledges that Mortgagee may sell and assign participation interests or other types of interests in this Mortgage to one or more domestic or foreign banks, insurance companies, pension funds, trusts or other institutional lenders or other persons, parties or investors (including, but not limited to, grantor trusts, owner trusts, special purpose corporations, REMICs, real estate investment trusts or other similar or comparable investment vehicles as may be selected by Mortgagee in its sole and absolute discretion) on terms and conditions satisfactory to Mortgagee in its sole and absolute discretion. Mortgagor grants to Mortgagee, and shall cause each Guarantor and other person or party associated or connected with this Mortgage or the Collateral therefore to grant to Mortgagee the right to distribute on a confidential basis financial and other information concerning Mortgagor, each such Guarantor and other person or party and the property encumbered by this Mortgage and any other pertinent information with respect to this Mortgage to any party who has purchased a participation interest in this Mortgage who has expressed an interest in purchasing any such interest in this Mortgage.

Mortgagee may provide to any actual or potential purchaser, transferee, assignee, servicer, participant or investor or any rating agency, all documents and information which Mortgagee now has or may hereafter acquire relating to the Loan, Mortgagor, Guarantor any other party to the Loan or the Mortgaged Property which shall have been furnished by or on behalf of Mortgagor, Guarantor or any other party to the Loan, as Mortgagee in its discretion determines is desirable. Mortgagor shall cooperate with Mortgagee with the same, including providing such information and documents as Mortgagee may reasonably request.

### SECTION 42. **Waiver of Notice.**

Mortgagor shall not be entitled to any notices of any nature whatsoever from Mortgagee except with respect to matters for which this Mortgage specifically and expressly provides for the giving of notice by Mortgagee to Mortgagor and except with respect to matters for which Mortgagee is required by applicable law to give notice, and Mortgagor hereby expressly

waives the right to receive any notice from Mortgagee with respect to any matter for which this Mortgage does not specifically and expressly provide for the giving of notice by Mortgagee to Mortgagor.

### SECTION 43. **Remedies of Mortgagor.**

In the event that a claim or adjudication is made that Mortgagee has acted unreasonably or unreasonably delayed acting in any case where by law or under the Note, this Mortgage or the Other Security Documents, it has an obligation to act reasonably or promptly, Mortgagee shall not be liable for any monetary damages, and Mortgagor's remedies shall be limited to injunctive relief or declaratory judgment. Under no circumstances shall Mortgagee and/or any of its parents, affiliates, subsidiaries or other related parties and/or any of their respective officers, directors, shareholders, agents, and/or employees (all of the foregoing being collectively referred to as the "**Mortgagee Parties**") have any personal liability in connection with the Note, this Mortgage and/or any of the other Security Documents or anything, matter or circumstance related thereto.

### SECTION 44. **Sole Discretion of Mortgagee.**

Wherever pursuant to this Mortgage, Mortgagee exercises any right given to it to approve or disapprove, or any arrangement or term is to be satisfactory to Mortgagee, the decision of Mortgagee to approve or disapprove or to decide that arrangements or terms are satisfactory or not satisfactory shall be in the sole discretion of Mortgagee and shall be final and conclusive, except as may be otherwise expressly and specifically provided herein.

### SECTION 45. **Non-Waiver.**

The failure of Mortgagee to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Mortgage. Mortgagor shall not be relieved of Mortgagor's obligations hereunder by reason of (a) the failure of Mortgagee to comply with any request of Mortgagor or Guarantors to take any action to foreclose this Mortgage or otherwise enforce any of the provisions hereof or of the Note or the Other Security Documents, (b) the release, regardless of consideration, of the whole or any part of the Mortgaged Property, or of any person liable for the Debt or any portion thereof, or (c) any agreement or stipulation by Mortgagee extending the time of payment or otherwise modifying or supplementing the terms of the Note, this Mortgage, or the Other Security Documents. Mortgagee may resort for the payment of the Debt to any other security held by Mortgagee in such order and manner as Mortgagee, in its discretion, may elect. Mortgagee may take action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Mortgagee thereafter to foreclose this Mortgage. The rights of Mortgagee under this Mortgage shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Mortgagee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision. Mortgagee shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded at law or in equity.

## SECTION 46. **Security Deposits.**

Mortgagor shall establish with Mortgagee a rent security account to which shall be transferred and maintained all security deposits in connection with the Leases affecting the Mortgaged Property. Upon an Event of Default under this Mortgage, Mortgagee shall be permitted to utilize the security deposits in accordance with the applicable underlying leases.

## SECTION 47. **No Oral Change.**

This Mortgage, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Mortgagor or Mortgagee, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

## SECTION 48. **Liability.**

If Mortgagor consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several. This Mortgage shall be binding upon and inure to the benefit of Mortgagor and Mortgagee and their respective successors and assigns forever.

## SECTION 49. **Inapplicable Provisions.**

If any term, covenant or condition of the Note or this Mortgage is held to be invalid, illegal or unenforceable in any respect, the Note and this Mortgage shall be construed without such provision.

## SECTION 50. **Headings, etc.**

The headings and captions of various Sections of this Mortgage are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

## SECTION 51. **Duplicate Originals.**

This Mortgage may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be an original.

## SECTION 52. **Definitions.**

Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Mortgage may be used interchangeably in singular or plural form and the word "**Mortgagor**" shall mean "**each Mortgagor and any subsequent owner or owners of the Mortgaged Property or any part thereof or any interest therein**", the word "**Mortgagee**" shall mean "**Mortgagee and any subsequent holder of the Note**", the word "**person**" shall include an individual, corporation, partnership, trust, unincorporated association, government, governmental authority, and any other entity, and the words "**Mortgaged Property**"

shall include any portion of the Mortgaged Property and any interest therein. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

### SECTION 53. **Trust Fund.**

Pursuant to Section 13 of the Lien Law of the State of New York, Mortgagor shall receive the advances secured hereby and shall hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of any improvement and shall apply such advances first to the payment of the cost of any such improvement on the Mortgaged Property before using any part of the total of the same for any other purpose.

### SECTION 54. **Commercial Property.**

Mortgagor represents that this Agreement:

1.    [ x ]   Covers real property principally improved or to be improved by one or more structures containing in the aggregate not more than six (6) residential dwelling units, each having its own separate cooking facilities (less than 6).

2.    [   ]   Does not cover real property improved as described above (more than 6).

### SECTION 55. **Construction.**

THIS MORTGAGE, THE NOTE AND EACH OF THE OTHER SECURITY DOCUMENTS SHALL IN ALL RESPECTS BE GOVERNED, CONSTRUED, APPLIED AND ENFORCED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW.

### SECTION 56. **Joint and Several Obligation.**

Notwithstanding anything to the contrary, the representations, warranties, covenants and/or agreements made by Mortgagor (should the Mortgagor consist of one or more individuals or entities), herein and/or in any of the other Security Documents and the liability of the Mortgagor hereunder or thereunder, is joint and several.

### SECTION 57. **Purpose of Loan.**

The Mortgagor represents to Mortgagee that the loan evidenced by the Note and secured by this Mortgage ("**Loan**") is for business or commercial purposes only and not for personal, family, consumer or household purposes. Mortgagor acknowledges that Mortgagee has made the Loan to Mortgagor in reliance upon the above representation by Mortgagor. The above representation by Mortgagor will survive the closing and repayment of the Loan.

### SECTION 58. **Felony Criminal Offense.**

The Mortgagor represents that no Guarantor or member of Mortgagor have ever been convicted of a felony criminal offense.

### SECTION 59. **Patriot Act.**

Mortgagor represents and warrants that it is not acting, directly or indirectly, for or on behalf of any person, group, entity, or nation named by the United States Treasury Department as a Specially Designated National and Blocked Person, or for or on behalf of any person, group, entity, or nation designated in Presidential Executive Order 13224 as a person who commits, threatens to commit, or supports terrorism; and that it is not engaged in this transaction directly or indirectly on behalf of, or facilitating this transaction directly or indirectly on behalf of, any such person, group, entity, or nation. Mortgagor agrees to defend, indemnify, and hold harmless the Mortgagee from and against any and all claims, damages, losses, risks, liabilities, and expenses (including attorneys' fees and costs) arising from or related to any breach of the foregoing representation and warranty.

### SECTION 60. **Entire Agreement.**

The Note, this Mortgage and the Other Security Documents constitute the entire understanding and agreement between Mortgagor and Mortgagee with respect to the transactions arising in connection with the Debt (as such term is defined in the Note) and supersede all prior written or oral understandings and agreements between Mortgagor and Mortgagee with respect thereto. Mortgagor hereby acknowledges that, except as incorporated in writing in the Note, this Mortgage and the Other Security Documents, there are not, and were not, and no persons are or were authorized by Mortgagee to make any representations, understandings, stipulations, agreements or promises, oral or written, with respect to the transaction which is the subject of the Note, this Mortgage and the Other Security Documents. The Mortgagor further recognizes that, in general, borrowers who experience difficulties in honoring their loan obligations, in an effort to inhibit or impede lenders from exercising the rights and remedies available to lenders pursuant to mortgages, notes, loan agreements or other instruments evidencing or affecting loan transactions, frequently present in court the argument, without merit, that some loan officer or administrator of the lender made an oral modification or made some statement that could be interpreted as an extension or modification or amendment of one or more debt instruments and that the borrower relied to its detriment upon such "oral modification of the loan document". For that reason, and in order to protect the Mortgagee from such allegations in connection with the transactions contemplated by this Mortgage and in the Note and Other Security Documents, the Mortgagor acknowledges that this Mortgage, the Note, the Other Security Documents, and all instruments referred to in any of them can be extended, modified or amended only in writing executed by the Mortgagee and that none of the rights and benefits of the Mortgagee can be waived permanently except in a written document executed by the Mortgagee. The Mortgagor further acknowledges the Mortgagor's understanding that no officer or administrator of the mortgagee has the power or the authority from the Mortgagee to make an oral extension or modification or amendment of any such instrument or agreement on behalf of the Mortgagee.

- 29 -

SECTION 61. **Single Asset Real Estate.**

Mortgagor hereby represents and warrants that the Mortgaged Property constitutes "single asset real estate" as defined in, and pursuant to, Section 101(51B) of the United States Bankruptcy Code. Mortgagee hereby irrevocably agrees that the obligations of each Mortgagor under this Mortgage and the Note are limited to the maximum amount that would not render each Mortgagor's obligations subject to avoidance under applicable fraudulent conveyance provisions of the United States Bankruptcy Code. Each Mortgagor hereby represents that each of the respective Mortgaged Properties, based on appraisals thereof, are sufficient to secure the Debt. By virtue of the respective contributions of each of the Mortgaged Properties to the lien of this Mortgage, each Mortgagor hereby represents that each is solvent as of the date hereof. Nothing in this Section shall be construed so as to limit the obligations of the Guarantor under their guarantee(s).

SECTION 62. **Savings Clause.**

Mortgagee hereby irrevocably agrees that the obligations of each Mortgagor under this Mortgage and the Note are limited to the maximum amount that would not render each Mortgagor's obligations subject to avoidance under applicable fraudulent conveyance provisions of the United States Bankruptcy Code. Each Mortgagor hereby represents that each of the respective Mortgaged Properties, based on appraisals thereof, are sufficient to secure the Debt. By virtue of the respective contributions of each of the Mortgaged Properties to the lien of this Mortgage, each Mortgagor hereby represents that each is solvent as of the date hereof. Nothing in this Section shall be construed so as to limit the obligations of the Guarantor under their guarantee(s).

SECTION 63. **Publicity.**

Mortgagor agrees that Mortgagee may issue press releases concerning its financing of the Mortgaged Property pursuant to the Note, this Mortgage and the Other Security Documents. Further, if Mortgagee is financing any construction at the Mortgaged Property, whether pursuant to the Note, this Mortgage or the Other Security Documents, Mortgagee shall be entitled to maintain a sign of reasonable dimension and location at the construction site advertising and promoting such financing.

SECTION 64. **Counterparts.**

To facilitate execution, this Mortgage may be executed in as many counterparts as may be convenient or required. It shall not be necessary that the signature and acknowledgment of each party, or that the signature and acknowledgment of all persons required to bind any party, appear on each counterpart. All counterparts shall collectively constitute single instrument. It shall not be necessary in making proof of this Mortgage to produce or account for more than a single instrument. It shall not be necessary in making proof of this Mortgage to produce or account for more than a single counterpart containing the respective signatures and acknowledgment of, or on behalf of, each of the parties hereto.

SECTION 65. **Intentionally Omitted.**

SECTION 66. **Single Purpose Entity.**

Mortgagor's Organizational Documents shall provide that until such time that the Debt is paid in full that:

(a) Mortgagor has not owned, does not own and will not own any asset or property other than (i) the Mortgaged Property, and (ii) incidental personal property necessary for the ownership, management or operation of the Mortgaged Property.

(b) Company has not engaged, does not engage, and will not engage in any business other than the ownership, management and operation of the Mortgaged Property and Mortgagor will conduct and operate its business as presently conducted and operated.

(c) Mortgagor has not entered and is not a party to and will not enter into or be a party to any contract or agreement with any affiliate of Mortgagor, any constituent party of Mortgagor or any affiliate of any constituent party, except in the ordinary course of business and on terms and conditions that are disclosed to Mortgagee in advance and that are intrinsically fair, commercially reasonable and substantially similar to those that would be available on an arms-length basis with third parties other than any such party.

(d) Mortgagor has not incurred and will not incur any indebtedness other than (i) the Loan and (ii) unsecured trade payables and operational debt not evidenced by a note and in an aggregate amount not exceeding one percent (1%) of the original principal amount of the Loan at any one time; provided that any Indebtedness incurred pursuant to sub-clause (ii) shall be (x) not more than sixty (60) days past due and (y) incurred in the ordinary course of business (the indebtedness described in the foregoing clauses (i) and (ii) is referred to herein, collectively, as "**Permitted Indebtedness**"). No indebtedness other than the Loan may be secured (subordinate or pari passu) by the Mortgaged Property.

(e) Mortgagor has not made and will not make any loans or advances to any individual, sole proprietorship, partnership, limited liability partnership, joint venture, trust, unincorporated organization, association, corporation, limited liability Mortgagor, institution, entity, party or government (whether territorial, national, federal, state, county, city, municipal or otherwise, including, without limitation, any instrumentality, division, agency, body or department thereof) (including any affiliate or constituent party) (a "**Person**"), and has not acquired and shall not acquire obligations or securities of its affiliates.

(f) Mortgagor is and will remain solvent and Mortgagor has paid and will pay its debts and liabilities (including, as applicable, shared personnel and overhead expenses) from its assets as the same shall become due.

(g) Mortgagor has done or caused to be done and will do all things necessary to observe organizational formalities and preserve its existence, and Mortgagor will not (i) terminate or fail to comply with the provisions of its organizational documents, or (ii) unless Mortgagee has

- 31 -

consented, amend, modify or otherwise change its partnership certificate, partnership agreement, articles of incorporation and bylaws, operating agreement, trust or other organizational documents.

(h) Mortgagor has maintained and will maintain all of its accounts, books, records, financial statements and bank accounts separate from those of its affiliates and any other Person. Mortgagor's assets have not been and will not be listed as assets on the financial statement of any other Person; provided, however, that Mortgagor's assets may be included in a consolidated financial statement of its affiliates if (i) appropriate notation shall be made on such consolidated financial statements to indicate the separateness of Mortgagor and such affiliates and to indicate that Mortgagor's assets and credit are not available to satisfy the debts and other obligations of such affiliates or any other Person, and (ii) such assets shall be listed on Mortgagor's own separate balance sheet. Mortgagor has and will file its own tax returns (to the extent Mortgagor is required to file any such tax returns) and will not file a consolidated federal income tax return with any other Person. Mortgagor has maintained and shall maintain its books, records, resolutions and agreements as official records.

(i) Mortgagor has been and will be, and has held and at all times will hold itself out to the public as, a legal entity separate and distinct from any other entity (including any affiliate of Mortgagor or any constituent party of Mortgagor), has corrected and shall correct any known misunderstanding regarding its status as a separate entity, has conducted and shall conduct business in its own name, has not identified and shall not identify itself or any of its affiliates as a division or part of the other, and has maintained and shall maintain and utilize separate stationery, invoices and checks bearing its own name.

(j) Mortgagor has maintained and will maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations.

(k) Neither Mortgagor nor any constituent party has sought or will seek or effect the liquidation, dissolution, winding up, consolidation or merger, in whole or in part, of Mortgagor.

(l) Mortgagor has not commingled and will not commingle the funds and other assets of Mortgagor with those of any affiliate or constituent party or any other Person, and has held and will hold all of its assets in its own name.

(m) Mortgagor has maintained and will maintain its assets in such a manner that it will not be costly or difficult to segregate, ascertain or identify its individual assets from those of any affiliate or constituent party or any other Person.

(n) Other than the Loan, Mortgagor has not assumed or guaranteed or become obligated for the debts of any other Person and has not held itself out to be responsible for or have its credit available to satisfy the debts or obligations of any other Person, and Mortgagor will not assume or guarantee or become obligated for the debts of any other Person and does not and will not hold itself out to be responsible for or have its credit available to satisfy the debts or obligations of any other Person.

- 32 -

(o) Mortgagor hereby covenants and agrees that it will comply with or cause the compliance with, (i) all the representations, warranties and covenants contained within the Loan Documents, and (ii) all the organizational documents of Mortgagor.

(p) Mortgagor has not permitted and will not permit any affiliate or constituent party independent access to its bank accounts.

(q) Mortgagor has paid and shall pay the salaries of its own employees (if any) from its own funds and has and shall maintain a sufficient number of employees (if any) in light of its contemplated business operations.

(r) Mortgagor has compensated and shall compensate each of its consultants and agents from its funds for services provided to it and pay from its own assets all obligations of any kind incurred.

(s) Mortgagor has not, and without the unanimous consent of all of its members or managers will not, take any action that might reasonably be expected to cause Mortgagor to become insolvent.

(t) Mortgagor has allocated and will allocate fairly and reasonably any shared expenses, including shared office space.

(u) Notwithstanding any provision of the operating agreement or any amendment thereto, except in connection with the Loan or any prior mortgage financing that has been fully paid and discharged in full prior to the date hereof, Mortgagor has not pledged and will not pledge its assets for the benefit of any other Person.

(v) Mortgagor either (i) has no, and will have no, obligation to indemnify its officers, directors, managers, members, shareholders or partners, as the case may be, or (ii) if it has any such obligation, such obligation is fully subordinated to the Loan and will not constitute a claim against Mortgagor if cash flow in excess of the amount required to pay the Loan is insufficient to pay such obligation.

(w) Mortgagor will consider the interests of Mortgagor's creditors in connection with all limited liability company actions.

(x) Except as provided in the Loan Documents, Mortgagor has not and will not have any of its obligations guaranteed by any affiliate.

## SECTION 67. **Maximum Principal Amount Secured.**

Notwithstanding anything to the contrary contained in this Mortgage, the Note or the other Loan Documents, the maximum amount of principal indebtedness secured by this Mortgage at the time of execution hereof or which under any contingency may become secured by this Mortgage at any time hereafter is $2,560,000.00, plus (a) taxes, charges or assessments which may be imposed by law upon the Mortgaged Property, (b) premiums on insurance policies covering the Mortgaged Property and (c) expenses incurred in upholding the lien of this Mortgage, including,

- 33 -

but not limited to (1) the reasonable expenses of any litigation to prosecute or defend the rights and lien created by this Mortgage, (2) any amount, cost or charges to which Mortgagee becomes subrogated, upon payment, whether under recognized principles of law or equity, or under express statutory authority and (3) interest at the Default Rate or at the Interest Rate (in each case, as defined in the Note).

SECTION 68. **New York Tax Law Section 256.**

If, by reason of the additional sums that may become secured by the lien of this Mortgage pursuant to the terms hereof, a court or other governmental authority having jurisdiction at any time shall determine that this Mortgage is subject to Section 256 of the Tax Law of the State of New York, then Mortgagee reserves the right, in its discretion, to elect not to have such additional sums secured by this Mortgage and thereby reduce the amount of the debt secured hereby to a definite amount equal to the principal amount of the Note, interest thereon at the rate provided in the Note, plus any disbursements made to protect the security of this Mortgage, with interest on such disbursements at the Default Rate, plus any other sums as by statute or judicial interpretation now or hereafter may be permitted to be secured by the lien of a mortgage without incurring any additional mortgage recording tax. Any election by Mortgagee to so reduce the indebtedness secured by this Mortgage shall in no event be deemed a release, waiver or discharge by Mortgagee of Mortgagor's obligation to pay or reimburse Mortgagee for such sums and such obligation shall continue unimpaired and shall be a recourse obligation of Mortgagor and any Guarantor, regardless of any other provisions set forth in this Mortgage, the Note or any guaranty of the obligations secured hereby that may limit recourse against Mortgagor or any other Person.

**[Remainder of Page Intentionally Left Blank]**

**IN WITNESS WHEREOF**, Mortgagor and Mortgagee have executed this Mortgage the day and year first above written.

**MORTGAGOR:**

**THE HERMES HIPPIE LLC**,
a New York limited liability company

By: _____
Name: Lola Gusman
Title:   Managing Member

STATE OF NEW YORK          )
                           )   ss.:
COUNTY OF NEW YORK         )

On the 12th day of July in the year 2022, before me, the undersigned, a Notary Public in and for said State, personally appeared **Lola Gusman**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

SCOTT B. GORENSTEIN
Notary Public State of New York
No. 01GO5081910
Qualified in New York County
Commission Expires July 14, 20 23

- 2 -

## SCHEDULE A

## METES AND BOUNDS DESCRIPTION OF PROPERTY

THE CONDOMINIUM UNIT (THE "UNIT") KNOWN AS UNIT NO. 4F IN THE BUILDING DESIGNATED AS ONE GRAND ARMY PLAZA CONDOMINIUM, IN THE DECLARATION ESTABLISHING A PLAN FOR CONDOMINIUM OWNERSHIP OF SAID PREMISES UNDER ARTICLE 9-B OF THE REAL PROPERTY LAW OF THE STATE OF NEW YORK (THE "NEW YORK CONDOMINIUM ACT"), DATED 10/28/2008 AND RECORDED IN THE OFFICE OF THE REGISTER OF NEW YORK CITY (THE "REGISTER'S OFFICE") ON 12/22/2008 AS CRFN# 2008000483911, AS AMENDED BY FIRST AMENDMENT TO DECLARATION, DATED 07/27/22010 RECORDED 09/29/2010 AS CRFN# 2010000328328, AS AMENDED BY SECOND AMENDMENT TO DECLARATION, DATED 02/12/2014 RECORDED 02/21/2014 AS CRFN# 2014000065622, AS AMENDED BY THIRD AMENDMENT TO DECLARATION, DATED 12/26/2019 RECORDED 01/17/2020 AS CRFN# 2020000022546, AND AS FURTHER AMENDED BY FOURTH AMENDMENT TO DECLARATION, DATED 05/22/2019 RECORDED 01/23/2020 AS CRFN# 2020000027240, AND ALSO DESIGNATED AS TAX LOT 1129 IN BLOCK 1172 OF THE BOROUGH OF BROOKLYN ON THE TAX MAP OF THE REAL PROPERTY ASSESSMENT DEPARTMENT OF THE CITY OF NEW YORK AND ON THE FLOOR PLANS OF SAID BUILDING, CERTIFIED BY STEVEN B. JACOBS, FAIA, AND FILED WITH THE REAL PROPERTY ASSESSMENT DEPARTMENT OF THE CITY OF NEW YORK AS CONDOMINIUM PLAN NO. 2326 AND ALSO FILED IN THE REGISTER'S OFFICE ON 12/22/2008 AS CRFN# 2008000483912.

TOGETHER WITH AN UNDIVIDED 1.883349% INTEREST IN THE COMMON ELEMENTS.

THE PREMISES WITHIN WHICH THE UNIT IS LOCATED ARE MORE PARTICULARLY DESCRIBED AS FOLLOWS:

**ALL** that certain plot, piece or parcel of land, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

**BEGINNING** at the corner formed by the intersection of the easterly side of Plaza Street East and the northerly side of Eastern Parkway;

**RUNNING THENCE** northerly along the easterly side Plaza Street East, along an arc of a curve bearing to the left, having a radius of 830 feet, a distance of 220 feet 3 inches to the corner formed by the intersection of the said easterly side of Plaza Street East and the southerly side of St. Johns Place;

**RUNNING THENCE** easterly along the said southerly side of St. Johns Place, 79 feet;

**THENCE** southerly along a line forming an interior angle of 85 degrees 52 minutes 41 seconds with the southerly side of St. Johns Place, 100 feet 3-1/8 inches;

**RUNNING THENCE** westerly along a line at right angles to the last mentioned course, 20 feet 5-5/8 inches;

- 3 -

**THENCE** southerly along a line forming an exterior angle of 113 degrees 15 minutes 42 seconds with the last mentioned course, 46 feet 8-1/2 inches;

**THENCE** easterly along a line at right angles to the last mentioned course, 8 feet 6-1/4 inches;

**THENCE** southerly along a line at right angles to the last mentioned course, 35 feet 2-3/4 inches;

**THENCE** westerly along a line at right angles to the last mentioned course, 2 feet 11 inches;

**THENCE** southerly along a line at right angles to the last mentioned course, 29 feet;

**THENCE** easterly along a line at right angles to the last mentioned course, 8 feet 9-1/2 inches;

**THENCE** southerly along a line at right angles to the last mentioned course, 35 feet ¾ inches to the northerly side of Eastern Parkway;

**RUNNING THENCE** westerly along the northerly side of Eastern Parkway, 104 feet 8-1/2 inches to the corner formed by the intersection of the said northerly side of Eastern Parkway and the easterly side of Plaza Street East, the point or place of **BEGINNING.**

## CONDOMINIUM  RIDER

This CONDOMINIUM RIDER is made this, and is incorporated into and shall be deemed to amend and supplement the Mortgage and Security Agreement (the "Security Instrument") of the same date given by THE HERMES HIPPIE LLC, a New York limited liability company, with an address at 1 Grand Army Plaza, Unit 4F, Brooklyn, New York 11238 (the "Borrower") to secure Borrower's Note to LENDING ASSETS LLC, a New York limited liability company with an address at c/o Tower Fund Capital, 1325 Avenue of the Americas, 28th Floor, New York, New York 10019, (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

### 1 Grand Army Plaza, Unit 4F, Brooklyn, New York 11238

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:

### 1 Grand Army Plaza, Unit 4F, Brooklyn, New York 11238 a/k/a One Grand Army Plaza Condominium

(the "Condominium Project"). If the owner's association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. **Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. **Hazard Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," then:

    (i)    Lender waives the provision in Section 4 of the Lender's Mortgage for the payment of the premium for hazard insurance on the Property; and

    (ii)    Borrower's obligation under Section 4 of the Lender's Mortgage to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common

Initial(s)_____

Page 2 of 2

Loan#: 222

elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, with any excess paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:

(i)   the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial detection by fire or other casualty or in the case of a taking by condemnation or eminent domain;

(ii)  any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender;

(iii) termination of professional management and assumption of self-management of the Owners Association; or

(iv)  any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this Paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

**BORROWER:**

**THE HERMES HIPPIE LLC,**
a New York limited liability company

By: _____

Name:  Lola Gusman
Title:   Managing Member

Initial(s) _____

Loan#: 222

# Exhibit C

**NOTE**

$2,560,000.00                                                          New York, New York
                                                                                July 12, 2022

      **NOTE** (hereinafter, the "**Note**") made as of the 12th day of July, 2022, by **THE HERMES HIPPIE LLC**, a New York limited liability company, having an address at 1 Grand Army Plaza, Unit 4F, Brooklyn, New York 11238 (hereinafter, the "**Maker**") for the benefit of **LENDING ASSETS LLC**, a New York limited liability company, its successors and/ or assigns, as their interests may appear (hereinafter, the "**Payee**"), having offices at c/o Tower Fund Capital, 1325 Avenue of the Americas, 28th Floor, New York, New York 10019.

      **FOR VALUE RECEIVED,** Maker promises to pay to the order of Payee, at Tower Fund Capital, 1325 Avenue of the Americas, 28th Floor, New York, New York 10019, or at such other place as Payee may designate to Maker in writing from time to time, the principal sum of TWO MILLION FIVE HUNDRED SIXTY THOUSAND AND 00/100 DOLLARS ($2,560,000.00), together with interest thereon at the Interest Rate (or the Default Rate if applicable), calculated in the manner hereinafter set forth from and including the date of this Note to the date this Note is paid in full, as follows:

      A.    On the date hereof, interest on the principal sum of this Note from the date hereof to July 31, 2023 at the Interest Rate.

      B.    With interest thereon to be computed from the date hereof, at the rate of twelve and 00/100 percent (12%) percent per annum, in equal monthly installments in advance, on the first (1st) day of each calendar month during the Term in an amount equal to $25,600.00 per month, commencing on the 1st day of August in the year 2022, and on the 1st day of each consecutive month thereafter (the "**Payment Date**") until the Maturity Date (each such monthly payment, a "**Monthly Payment**"); provided, however, that in the event that the Borrower informs the Lender, in writing, that it intends to prepay the then-outstanding principal and accrued, but unpaid interest on the Note (the "**Pre-Payment Notice**"), such Pre-Payment shall be deemed accepted as of the 1st day of the calendar month that immediately follows the date of such Pre-Payment Notice (the "**Accelerated Payment Due Date**"), and the accrued, but unpaid interest shall be calculated through and including the Accelerated Payment Due Date.

      C.    Thereafter, on the Maturity Date, the entire outstanding principal balance of this Note, together with all accrued and unpaid interest through the Maturity Date at the Interest Rate, and all other sums payable to the holder of this Note (whether pursuant to this Note, the Mortgage or Other Security Documents (as hereinafter defined)) shall become due and payable.

For the purposes of this Note, these terms shall be defined as follows:

1.    The term "**Interest Rate**" as used in this Note shall mean interest at the fixed annual rate equal to twelve and 00/100 percent (12%) per annum.

2.    The term "**Principal Balance**" shall mean the outstanding principal balance of this Note from time to time.

3. The term **"Maturity Date"** as used in this Note shall mean the earlier of (i) July 31, 2023, or (ii) such sooner date, by acceleration or otherwise, as may be applicable pursuant to the terms hereof, at which time the entire Debt shall become due and payable.

4. The term **"Debt"** shall mean all principal, interest and other sums of any nature whatsoever, which may or shall become due to Payee in accordance with the provisions of this Note, the Mortgage or Other Security Documents.

5. The term **"Mortgage"** shall mean that certain Mortgage and Security Agreement dated the date hereof in the principal amount of $2,560,000.00, encumbering premises located at 1 Grand Army Plaza, Unit 4F, Brooklyn, New York 11238 a/k/a One Grand Army Plaza Condominium (the **"Property"**).

6. The term **"Other Security Documents"** shall mean any of the documents other than this Note or the Mortgage, now or hereafter executed by the Maker or others, and by or in favor of Payee, which wholly or partially secure or guarantee payment of this Note, or which otherwise pertain to the Loan.

7. The term **"Loan Documents"** shall mean this Note, the Mortgage and all and any of the documents now or hereafter executed by Maker and/or others and by or in favor of Payee, which evidences, secures or guarantees all or any portion of the payments due under this Note or otherwise is executed and/or delivered in connection with this Note, the Mortgage, guarantees and agreements.

Any capitalized terms used herein but not defined shall have the meanings ascribed to them in the Mortgage or Other Security Documents.

The failure to make any payment required under this Note or the occurrence of any Event of Default (as such term is defined in the Mortgage or the Other Security Documents) shall constitute an Event of Default under this Note.

Upon the occurrence of an Event of Default: (a) interest shall accrue hereunder at the Default Rate (as defined hereunder) prior to and subsequent to the entry of a Judgment of Foreclosure and Sale, (b) Payee may, at its option, without any written notice given to the Maker (such notice being expressly waived), DECLARE AND DEMAND this Note and the Debt immediately due and payable and (c) Payee may pursue all rights and remedies available hereunder or under Mortgage and the Other Security Documents. Payee's rights, remedies and powers, as provided in this Note, the Mortgage or the Other Security Documents are cumulative and concurrent, and may be pursued singlely, successively or together against Maker, any Guarantor of the indebtedness evidenced hereby or against any collateral granted or pledged by Maker under any of the Loan Documents or any other collateral security given at any time to secure the payment hereof, all at the sole discretion of Payee. Additionally, Payee may resort to every other right or remedy available at law or in equity without first exhausting the rights and remedies contained herein, all in Payee's sole discretion. Failure of Payee, for any period of time or on more than one occasion, to DECLARE AND DEMAND this Note and the Debt immediately due and payable

- 2 -

shall not constitute a waiver of the right to exercise the same at any time from and after any Event of Default.

A payment shall not be deemed to have been made on any day unless such payment has been received by Payee, at the required place of payment, in U.S. dollars by no later than 1:00 p.m. (New York time) on such day. Whenever any payment to Payee hereunder would otherwise be due (except by reason of acceleration) on a day that is not a Business Day, such payment shall instead be due on the next succeeding Business Day. If any installment of principal, interest or other sums due hereunder or under the Mortgage or any Other Security Document are not paid on the date on which same are due, the Maker shall pay to the Payee a late charge of ten percent (10.00%) of such unpaid installment as a late payment charge, such late charge to be immediately due and payable without demand by the Payee. Notwithstanding anything to the contrary, all payments due under this Note, the Mortgage and the Loan Documents shall be made by means of wire transfer to the order of Payee, as directed by Payee, and Payee shall have the absolute right to reject any payment not made by wire transfer. In addition, Maker shall pay to Payee the sum of $100.00 for any payment which is returned for any reason by Maker's bank unpaid.

Subject to the following provisions, provided that, simultaneously with any prepayment of the Debt, Maker shall pay to Payee a prepayment premium (excluding short term interest paid for the partial month of July, 2022) in an amount equal to six (6) Monthly Payments which would have been due and payable to Payee absent prepayment of the obligations hereunder (with the Interest Rate used to calculate the Prepayment Premium being that on the date of the Prepayment Notice, if the Interest Rate is variable hereunder) (the "**Prepayment Premium**"), then Maker shall have the right to prepay the Principal Balance in whole only, along with interest, additional interest, and any other sums due under this Note, the Mortgage or the Other Security Documents upon prior irrevocable written notice sent by Maker (a "**Prepayment Notice**"), setting forth the intended prepayment date ("**Prepayment Date**"), which Prepayment Notice must be received by Payee not more than sixty (60) days prior to the Prepayment Date and not less than thirty (30) days prior to the Prepayment Date and on the Prepayment Date, Maker shall make prepayment as herein above provided, failure of which to timely prepay shall result in a $1,000 prepayment cancellation fee to compensate Payee for expenses associated with Maker's failure to comply with its request and is not a penalty. Notwithstanding anything to the contrary contained herein, unless prepayment is tendered on the first day of a calendar month and unless Maker has tendered the Monthly Payment for the month in which the prepayment of the Debt occurs, Maker shall along with the prepayment of the Debt pay the entire Monthly Payment due for the month in which the Prepayment Date occurs (which amount shall constitute additional consideration for the prepayment). **SUCH PREPAYMENT PREMIUM SHALL BE PAID WHETHER THE PREPAYMENT IS VOLUNTARY OR INVOLUNTARY, INCLUDING ANY PREPAYMENT AFFECTED BY THE ACCELERATION PROVISIONS CONTAINED IN THE NOTE OR THE LOAN DOCUMENTS. UPON ACCELERATION, THE PREPAYMENT PREMIUM SHALL BE CALCULATED BASED UPON THE AMOUNT OF THE PREPAYMENT DUE ON THE DATE OF SUCH ACCELERATION. PROVIDED, HOWEVER, IF SUCH PREPAYMENT PREMIUM CONSTITUTES INTEREST UNDER APPLICABLE LAW, THE AMOUNT OF SUCH PREPAYMENT PREMIUM WILL BE REDUCED TO AN AMOUNT WHICH, WHEN ADDED TO ALL OTHER AMOUNTS WHICH CONSTITUTE INTEREST UNDER APPLICABLE LAW, WILL NOT EXCEED THE**

**MAXIMUM AMOUNT OF INTEREST WHICH MAY BE CONTRACTED FOR, CHARGED OR RECEIVED WITH RESPECT TO THE LOAN EVIDENCED HEREBY UNDER APPLICABLE LAW FOR THE ACTUAL PERIOD TIME OF SUCH LOAN IS OUTSTANDING.**

Maker acknowledges that this Note and Maker's obligations under this Note are and shall at all times continue to be absolute and unconditional in all respects. This Note, the Mortgage and the Other Security Document set forth the entire agreement and understanding of Payee and Maker.

Maker agrees to pay all costs and expenses of collection incurred by Payee, in addition to principal and interest (including, without limitation, reasonable attorneys' fees and disbursements which, in event Lender starts a Foreclosure and Sale, shall not be less than $5,000.00), and including all costs and expenses incurred in connection with the pursuit by Payee of any of its rights or remedies hereunder or under the Mortgage and/or the Other Security Documents or the protection of or realization of collateral or in connection with any of Payee's collection efforts, whether or not any action or proceeding on this Note, on the Mortgage and/or the Other Security Documents or any foreclosure proceeding is filed, all such costs and expenses being payable on demand, together with interest at the Default Rate thereon and being secured by the Mortgage and the Other Security Documents.

The indebtedness herein evidenced by this Note is secured by the Mortgage and the Other Security Documents.

All of the proceeds of this Note shall be used for the business purposes of the Maker and for no other purpose whatsoever.

THIS NOTE, THE MORTGAGE AND EACH OF THE OTHER SECURITY DOCUMENTS SHALL IN ALL RESPECTS BE GOVERNED, CONSTRUED, APPLIED AND ENFORCED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW.

Maker does hereby agree that upon the occurrence of an Event of Default (as such capitalized term is defined in the Mortgage), or upon the failure of Maker to pay the Debt in full on the Maturity Date, Payee shall be entitled to receive and Maker shall pay interest on the entire Debt at the rate of twenty-four (24%) percent per annum or at the maximum rate of interest which Maker may by law pay, whichever is lower (the "**Default Rate**"), to be computed from the occurrence of the Event of Default until the actual receipt and collection of the Debt, including all periods prior to or subsequent to the entry of a Judgment of Foreclosure and Sale. This charge shall be added to the Debt, and shall be deemed secured by the Mortgage. This clause, however, shall not be construed as an agreement or privilege to extend the date of the payment of the Debt, nor as a waiver of any other right or remedy accruing to Payee by reason of the occurrence of any Event of Default.

This Note is subject to the express condition that at no time shall Maker be obligated or required to pay interest on the Principal Balance at a rate which could subject Payee to either civil or criminal liability as a result of being in excess of the maximum rate which Maker is

- 4 -

permitted by law to contract or agree to pay. For the purposes of calculating the actual amount of interest paid and or payable, in respect of laws pertaining to usury or such other laws, all sums paid or agreed to be paid to Payee for the use, forbearance or detention of the indebtedness evidenced hereby shall, to the extent permitted by applicable law, be amortized, allocated and spread from the date of disbursement of the proceeds thereof until payment in full of the loan obligations, so that the actual rate of interest on account thereof is uniform throughout the term hereof. If, by the terms of this Note, Maker is at any time required or obligated to pay interest on the Principal Balance at a rate in excess of such maximum rate, the rate of interest under this Note shall be deemed to be immediately reduced to such maximum rate, and interest payable hereunder shall be computed at such maximum rate and the portion of all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of the Principal Balance.

No delay on the part of Payee in exercising any right or remedy under this Note, the Mortgage or the Other Security Documents or failure to exercise the same shall operate as a waiver in whole or in part of any such right or remedy. No notice to or demand on Maker shall be deemed to be a waiver of the obligation of Maker or of the right of Payee to take further action without further notice or demand as provided in this Note, the Mortgage and the Other Security Documents.

Each of Payee's rights and remedies under this Note shall be in addition to all of its other rights and remedies under the Mortgage, Other Security Documents and applicable law.

**TIME IS OF THE ESSENCE** with regard to Maker's performance of all the terms, covenants and conditions of this Note.

Any provision of this Note, the Mortgage or the Other Security Documents that is prohibited or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof or affecting the validity or enforceability of such provision.

All of the provisions of this Note shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

Maker hereby warrants, represents and covenants that no funds disbursed hereunder shall be used for personal family or household purposes.

Maker (and the undersigned representative of Maker, if any) represents that Maker has full power, authority and legal right to execute and deliver this Note and that the Debt hereunder constitutes a valid and binding obligation of Maker.

All notices to be given under this Note shall be given in the same manner as provided in the Mortgage.

This Note, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Maker or Payee, but only by an agreement in writing signed by the party against whom

enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

Without limiting any other provisions of the Mortgage or the Loan Documents, Maker, for itself and all endorsers, guarantors and sureties of this Note, and their heirs, legal representatives, successors and assigns, hereby waives valuation, appraisement, presentment for payment, demand, notice of nonpayment, notice of dishonor, protest of any dishonor, notice of protest and protest of this Note, lack of diligence, delays in collection or enforcement of this Note, notice of the intention to accelerate, the benefit of all applicable law affording any right or redemption or cure and all other notices in connection with the delivery, acceptance, performance, default or enforcement of the payment of this Note, except as expressly provided herein or in the Mortgage or any of the Other Security Documents, and in connection with any suit, action or proceeding brought by Payee on this Note, any and every right it may have to (a) a trial by jury, (b) interpose any counterclaim therein (other than a counterclaim which can only be asserted in a suit, action or proceeding brought by Payee on this Note and cannot be maintained in a separate action), and (c) have the same consolidated with any other or separate suit, action or proceeding, and agrees that their respective liability shall be unconditional and without regard to the liability of any other party and shall not be in any manner affected by any indulgence, extension of time, renewal, waiver or modification granted or consented to by Payee. Maker, for itself and all endorsers, guarantors and sureties of this Note, and their heirs, legal representatives, successors and assigns, hereby consents to every extension of time, renewal, waiver or modification that may be granted by Payee with respect to the payment or other provisions of this Note, and to the release of any makers, endorsers, guarantors or sureties, and their heirs, legal representatives, successors and assigns, and of any collateral given to secure the payment hereof, or any part hereof, with or without substitution, and agrees that additional makers, endorsers, guarantors or sureties and their heirs, legal representatives, successors and assigns, may become parties hereto without notice to Maker or to any endorser, guarantor or surety and without affecting the liability of any of them.

FOR ANY CLAIM, ACTION, OR DISPUTE ARISING UNDER, OR TO INTERPRET OR APPLY, THIS NOTE OR ANY OTHER SECURITY DOCUMENT, OR TO RESOLVE ANY DISPUTE ARISING UNDER THE FOREGOING OR THE RELATIONSHIP BETWEEN THE PARTIES, MAKER IRREVOCABLY SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK AND THE UNITED STATES DISTRICT COURT LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK CITY, NEW YORK, AND APPELLATE COURTS FROM ANY OF SUCH COURTS. MAKER IRREVOCABLY WAIVES ANY OBJECTION THAT IT MAY HAVE AT ANY TIME TO VENUE OF ANY SUCH SUIT, ACTION, OR PROCEEDING BROUGHT IN ANY SUCH COURT, INCLUDING ANY CLAIM THAT ANY SUCH SUIT, ACTION, OR PROCEEDING SO BROUGHT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. NOTHING IN THE MORTGAGE OR OTHER SECURITY DOCUMENTS SHALL BE DEEMED TO PRECLUDE PAYEE FROM BRINGING ANY SUIT, ACTION, OR PROCEEDING RELATING TO ANY OTHER SECURITY DOCUMENT OR THE DEBT IN ANY OTHER JURISDICTION WHERE PAYEE COULD OTHERWISE PROPERLY BRING SUCH SUIT, ACTION, OR PROCEEDING. MAKER FURTHER CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY REGISTERED OR CERTIFIED U.S. MAIL, POSTAGE PREPAID, TO MAKER AT THE ADDRESS SET FORTH ON PAGE 1 HEREOF, AND

CONSENTS AND AGREES THAT SUCH SERVICE SHALL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE (BUT NOTHING HEREIN SHALL AFFECT THE VALIDITY OR EFFECTIVENESS OF PROCESS SERVED IN ANY OTHER MANNER PERMITTED BY LAW).

The parties intend that each of the Makers (if more than one) shall be fully liable, jointly and severally, for all of the Debt. Nonetheless, in case a court finds that any Maker is not such a primary obligor with respect to all or any part of such obligations, the Makers expressly waive the benefit of any and all defenses and discharges available to a guarantor, surety, endorser or accommodation party dependent on an obligor's character as such. Without limiting the generality of the foregoing, the liability of the Makers hereunder shall not be affected or impaired in any way by any of the following acts or things (which the Payee is hereby expressly authorized to do, omit or suffer from time to time without notice to or consent of anyone): (i) any acceptance of collateral security, guarantors, accommodation parties or sureties for any or all indebtedness arising under this Note, the Mortgage or the Other Security Documents; (ii) any extension or renewal of any such indebtedness (whether or not for longer than the original period) or any modification of the interest rate, maturity or other terms of any such indebtedness; (iii) any waiver or indulgence granted to either Maker, and any delay or lack of diligence in the enforcement of the indebtedness arising under this Note, the Mortgage or the Other Security Documents; (iv) any full or partial release of, compromise or settlement with, or agreement not to sue, either Maker or any guarantor or other person liable on any such indebtedness; (v) any release, surrender, cancellation or other discharge of any indebtedness arising under this Note, the Mortgage or the Other Security Documents, or the acceptance of any instrument in renewal or substitution for any instrument evidencing any such indebtedness; (vi) any failure to obtain collateral security (including rights of setoff) for any indebtedness arising under this Note, the Mortgage or the Other Security Documents, or to see to the proper or sufficient creation and perfection thereof, or to establish the priority thereof, or to preserve, protect, insure, care for, exercise or enforce any collateral security for any such indebtedness; (vii) any modification, alteration, substitution, exchange, surrender, cancellation, termination, release or other change, impairment, limitation, loss or discharge of any collateral security for any such indebtedness; (viii) any assignment, sale, pledge or other transfer of any of the indebtedness arising under this Note, the Mortgage or the Other Security Documents; or (ix) any manner, order or method of application of any payments or credits on any indebtedness arising under this Note, the Mortgage or the Other Security Documents. Each Maker also hereby waives any right of contribution, subrogation, indemnification or other right arising as a result of any payment made toward the Debt of the other Maker.

Each of the Makers (if more than one hereby waives, for the benefit of the Payee: (i) any right the Payee, as a condition of payment or performance by either Maker, to (A) proceed against the other Maker or any other person or entity, (B) proceed against or exhaust any collateral for the Debt held from the other Maker or any other person or entity, (C) proceed against or have resort to any balance of any deposit account, securities account, or credit on the books of the Payee in favor of the other Maker or any other person or entity, or (D) pursue any other remedy in the power of the Payee whatsoever; (ii) any defense rising by reason of the incapacity, lack of authority or any disability or other defense of the other Maker, including any defense based on or arising out of the lack of validity or the unenforceability of the Debt or any agreement or instrument relating thereto or by reason of the cessation of the liability of the other Maker from any cause other than payment in full of the Debt; (iii) any defense based upon any statute or rule of law which

- 7 -

provides that the obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal; (iv) any defense based upon the Payee's errors or omissions in the administration of the Debt; (v) (1) any principles or provisions of law, statutory or otherwise, which are or might be in conflict with the terms hereof and any legal or equitable discharge of its obligations hereunder, (2) the benefit of any statute of limitations affecting its liability hereunder or the enforcement hereof, (3) any rights to set-offs, recoupments and counterclaims, and (4) promptness, diligence and any requirement that the Payee protect, secure, perfect or insure any security interest or lien or any property subject thereto; (vi) notices, demands, presentments, protests, notices of protest, notices of dishonor and notices of any action or inaction, including acceptance hereof, notices of default thereunder or under this Note, the Mortgage or the Other Security Documents, any agreement or instrument related thereto, notices of any renewal, extension or modification of the Debt or any agreement related thereto, notices of any extension of credit to the other Maker and notices of any matters referred to in any guaranty securing this Note and any right to consent to any thereof; and (vii) any defenses or benefits that may be derived from or afforded by law which limit the liability of or exonerate sureties, or which may conflict with the terms hereof.

Notwithstanding anything to the contrary contained herein or in the Mortgage or Other Security Documents, Maker hereby irrevocably agrees that the obligations of each Maker (if more than one) under this Note and the Mortgage are limited to the maximum amount that would not render each Maker's obligations subject to avoidance under applicable fraudulent conveyance provisions of the United States Bankruptcy Code. Maker hereby represents that the Property, based on appraisal thereof, is sufficient to secure the Debt. By virtue of the respective contributions of each of the Properties to the lien of the Mortgage as security for this Note, each Maker hereby represents that each is solvent as of the date hereof. Nothing in this paragraph shall be construed so as to limit the obligations of the Guarantor (as defined in the Mortgage) under their guarantee(s).

Payment of interest payments due July 12, 2022 through July 31, 2023 is hereby acknowledged and such sum is hereby held in escrow to be drawn down on the 1st day of each month.

**[Remainder of Page Intentionally Left Blank]**

**IN WITNESS WHEREOF**, Maker has duly executed this Note the day and year first above written.

**THE HERMES HIPPIE LLC**
a New York limited liability company

By: _____
Name: Lola Gusman
Title:   Managing Member

STATE OF NEW YORK          )
                           )   ss.:
COUNTY OF NEW YORK         )

On the 12th day of July in the year 2022, before me, the undersigned, a Notary Public in and for said State, personally appeared **Lola Gusman**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

SCOTT B. GORENSTEIN
Notary Public State of New York
No. 01GO5061910
Qualified in New York County
Commission Expires July 14, 20___

- 10 -

## GUARANTY OF PAYMENT

New York, New York
July 12, 2022

WHEREAS, **THE HERMES HIPPIE LLC**, a New York limited liability company, having an address at 1 Grand Army Plaza, Unit 4F, Brooklyn, New York 11238, ( the "Borrower"), are about to borrow the sum of TWO MILLION FIVE HUNDRED SIXTY THOUSAND AND 00/100 DOLLARS ($2,560,000.00) from **LENDING ASSETS LLC,** with an address at c/o Tower Fund Capital, 1325 Avenue of the Americas, 28th Floor, New York, New York 10019 ("Lender"), for a loan in the principal sum of $2,560,000.00 dated July 12, 2022 (the "Loan"), which Loan is evidenced by one (1) note dated even date herewith (the "Note") and is secured by a certain Mortgage (the "Mortgage") to be made of even date therewith, against the premises known as 1 Grand Army Plaza, Unit 4F, Brooklyn, New York 11238 a/k/a One Grand Army Plaza Condominium (the "Premises");

WHEREAS Lender is willing to make the Loan to the Borrower only if the undersigned, jointly and severally, (sometimes hereinafter referred to as the "Guarantor") execute and deliver this Guaranty of Payment to Lender of the Debt (as herein defined) in the manner hereinafter provided;

NOW, THEREFORE, in consideration of good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, and in order to induce Lender to make the Loan to the Borrower, the undersigned hereby jointly and severally covenant and agree with Lender as follows:

1.      The undersigned jointly and severally guarantee, absolutely, irrevocably and unconditionally, to Lender the payment of the Debt. The term "Debt" as used in this Guaranty shall mean all sums due under the Note including principal and interest and other sums that may accrue thereunder by the specific terms of the Note or the Mortgage.

2.      The undersigned agrees that in the event of any default by the Borrower in failing to make any payments due to Lender that arise out of the terms of the Note or Mortgage, that upon Lender giving written notice thereof to Guarantor, the undersigned shall, within ten (10) days of receipt of any such default notice, either cure the default by the payment of the amount required if such default can then be cured, and if the Note has been accelerated in full, or upon maturity, if the Note has not been paid in full by Borrower, the undersigned will pay all sums due upon the Note at that time. As a condition to making the full payment of the Note on either an acceleration of the Note or if the Note is not paid on the maturity date stated in the Note, Lender agrees, simultaneously therewith, to assign all of Lender's rights in and to the Note and Mortgage by executing and delivering to Guarantor an Assignment of Mortgage Without Recourse and Without Covenant, except that Lender shall represent in the Assignment of Mortgage the amount of the then outstanding principal balance remaining on the Note, and the date to which interest has been paid by Borrower. In addition, simultaneously with the undersigned making full payment, Lender shall also deliver an allonge to the

3

Note to transfer and assign all of Lender's rights therein to Guarantor. The undersigned further agrees to and guaranties any of the following additional obligations:

(a)     any ongoing matters arising out of the transaction contemplated hereby as represented and set forth in this Guaranty, the Debt, the Note or the Mortgage;

(b)     any amendment to, or restructuring of, this Guaranty, the Debt, the Note or the Mortgage, provided that no such amendment shall increase the amount of the principal amount of the obligation or the interest rate, except as is set forth in the Note when originally executed; and

(c)     any and all lawful action that may be taken by Lender in connection with the enforcement of the provisions of this Guaranty, the Note, and the Mortgage whether or not suit is filed in connection with the same.

All sums expended by Lender shall be payable on demand and, until reimbursed by the Borrower or by the undersigned pursuant hereto, shall bear interest at the default interest rate as set forth in the Note.

3.     All monies available to Lender for application in payment or reduction of the Note may be applied by Lender in such manner and in such amounts and at such time or times and in such order, priority and proportions as Lender may see fit to the payment or reduction of such portion of the sums due on the Note as Lender may elect.

4.     If any of the following events should occur:

(a)     default under any of the terms, covenants and conditions set forth in the Note or the Mortgage and its continuance beyond any applicable notice and/or grace periods therein contained;

(b)     the undersigned violates any provision of this Guaranty;

then, and in such event, Lender may declare all sums due and payable under the Note, the Mortgage and this Guaranty of Payment, and the same shall become, immediately due and payable in full.

5.     This is a guaranty of payment and not of collection and the undersigned further waives any right to require that any action be brought against the Borrower or any other person or party or to require that resort be had to any security given to secure the Note.

6.     Each reference herein to Lender shall be deemed to include its successors and assigns, including any participants in the Note or Mortgage, in whose favor the provisions of this Guaranty shall also inure. Each reference herein to the undersigned shall be deemed to include each individual guarantor and their respective heirs, executors, administrators, legal representatives, successors and assigns of the undersigned, all of whom shall be bound by the provisions of this Guaranty, provided, however, that the

4

undersigned shall in no event nor under any circumstance have the right, without obtaining the prior written consent of Lender, to assign or transfer the undersigned's obligations and liabilities under this Guaranty, in whole or in part, to any other person, party or entity.

7.      The term "undersigned" as used herein shall, if this Guaranty is signed by more than one party, unless otherwise stated herein, mean the undersigned and each of them and each undertaking herein contained shall be their joint and several undertaking.

8.      No delay on the part of Lender in exercising any right or remedy under this Guaranty or failure to exercise the same shall operate as a waiver in whole or in part of any such right or remedy. No notice to or demand on the undersigned shall be deemed to be a waiver of the obligations of the undersigned or of the right of Lender to take further action but Lender shall give notice and make a demand on Guarantor as provided in this Guaranty. No course of dealing between the undersigned and Lender shall change, modify or discharge, in whole or in part, this Guaranty or any obligations of the undersigned hereunder.

9.      This Guaranty may only be modified, amended or changed by an agreement in writing signed by Lender and the undersigned. No waiver of any term, covenant or provision of this Guaranty shall be effective unless given in writing by Lender and if so given by Lender shall only be effective in the specific instance in which given. The execution and delivery hereafter to Lender by the undersigned of a new instrument of guaranty or any reaffirmation of guaranty, of whatever nature, shall not terminate, supersede or cancel this instrument, unless expressly so provided therein, and

all rights and remedies of Lender hereunder or under any instrument of guaranty hereafter executed and delivered to Lender by the undersigned shall be cumulative and may be exercised singly or concurrently.

10.      The undersigned acknowledge that this Guaranty and the undersigned's obligations under this Guaranty are and shall at all times continue to be absolute, irrevocable and unconditional in all respects, and shall at all times be valid and enforceable irrespective of any other agreements or circumstances of any nature whatsoever which might otherwise constitute a defense to this Guaranty and the obligations of the undersigned under this Guaranty or the obligations of any other person or party (including, without limitation, the Borrower) relating to this Guaranty or the obligations of the undersigned hereunder or otherwise with respect to the obligations arising out of the Note from Borrower to Lender, including, but not limited to, the realization upon any collateral given, pledged or assigned as security for all or any portion of said obligations due arising out of the terms of the Note, or the filing of a petition under Title 11 of the United States Code with regard to the Borrower or the undersigned, or the commencement of an action or proceeding for the benefit of the creditors of the Borrower or the undersigned, or the obtaining by Lender of title to any collateral given, pledged or assigned as security for the Debt by reason of any pledge or security agreement or otherwise.  This Guaranty sets forth the entire agreement and understanding of Lender and the undersigned with respect to the matters covered by this

5

Guaranty and the undersigned acknowledge that no oral or other agreements, understandings, representations or warranties exist with respect to this Guaranty or with respect to the obligations of the undersigned under this Guaranty, except those specifically set forth in this Guaranty.

11.     This Guaranty has been validly executed and delivered by the undersigned. The undersigned represents and warrants to Lender that he has the power to do so and to perform his obligations under this Guaranty, and this Guaranty shall constitute the legally binding obligation of the undersigned fully enforceable against the undersigned in accordance with the terms hereof.

12.     All notices required by this Guaranty shall be in writing, signed by the party giving the same and shall be delivered in person, or sent by ordinary mail, with postage prepaid and addressed to each respective party's address as set forth in the heading of this Guaranty, or by receipted for Federal Express or other recognized overnight carrier delivery service, addressed as follows:

If to Lender:

LENDING ASSETS LLC,
c/o Tower Fund Capital
1325 Avenue of the Americas
28th Floor,
New York, New York 10019

With a copy to go to:

Weltz Kakos Gerbi Wolinetz Volynsky LLP
9889 S. Santa Monica Blvd.
Suite 210
Beverly Hills, CA 90212
Attention: Gabriel Gerbi, Esq.

or as may subsequently be duly changed by written notice to the other parties.

6

13.     This Guaranty is, and shall be deemed to be, a contract entered into under and pursuant to the laws of the State of New York and shall be in all respects governed, construed, applied and enforced in accordance with the laws of the State of New York and the applicable laws of the United States of America and without regard to principles of conflicts of laws. The undersigned acknowledges and agrees that this Guaranty is, and is intended to be, an instrument for the payment of money only, as such phrase is used in Section 3213 of the Civil Practice Law and Rules of the State of New York, and the undersigned is fully familiar with Lender's rights and remedies pursuant to said Section 3213.

14.     The undersigned agrees to submit to personal jurisdiction in the State of New York in any action or proceeding arising out of this Guaranty. In furtherance of such agreement, the undersigned hereby agree and consent that without limiting other methods of obtaining jurisdiction, personal jurisdiction over the undersigned in any such action or proceeding may be obtained within or without the jurisdiction of any court located in New York, in the County of New York County, and that any process or notice of motion or other application to any such court in connection with any such action or proceeding may be served upon the undersigned by certified mail to, or by personal service at, the last known addresses of the undersigned, whether such address be within or without the jurisdiction of any such court, with copies also sent to the undersigned at the two addresses set forth in Paragraph 12 hereof. The undersigned hereby further agrees that the venue of any litigation arising in connection with the Note or in respect of any of the obligations of the undersigned under this Guaranty, may, to the extent permitted by law, be in New York County.

15.     The undersigned absolutely, unconditionally and irrevocably waives any and all right to assert or interpose any defense (other than upon the final and indefeasible payment in full of the sums due under the Note, Guarantor shall have all rights upon making said payment, to have Lender assign the Note and Mortgage to the undersigned as set forth in Paragraph 2 herein), of setoff, counterclaim or cross-claim of any nature whatsoever with respect to this Guaranty or the obligations of the undersigned under this Guaranty, or the obligations of any other person or party (including without limitation, the Borrower) relating to this Guaranty, or the obligations of the undersigned hereunder or otherwise with respect to the obligations due Lender under the Note in any action or proceeding brought by Lender to collect the payment of sums and obligations due on the Note, or any portion thereof, or to enforce the obligations of the undersigned under this Guaranty (provided, however, that the foregoing shall not be deemed a waiver of the right of the undersigned to assert any compulsory counterclaim maintained in a court of the United States, or of the State of New York if such counterclaim is compelled under local law or rule of procedure, nor shall the foregoing be deemed a waiver of the right of the undersigned to assert any claim which would constitute a defense, setoff, counterclaim or cross-claim of any nature whatsoever against Lender in any separate action or proceeding). The undersigned hereby undertakes and agrees that this Guaranty shall remain in full force and effect for all of the obligations and liabilities of the undersigned

7

hereunder, notwithstanding the maturity of the Note, whether by acceleration, scheduled maturity or otherwise.

16.     No exculpatory provisions which may be contained in the Note or the Mortgage shall in any event or under any circumstances be deemed or construed to modify, qualify, or affect in any manner whatsoever the obligations and liabilities of the undersigned under this Guaranty.

17.     The undersigned hereby irrevocably and unconditionally waives, and Lender, by its acceptance of this Guaranty, irrevocably and unconditionally waives, any and all right to trial by jury in any action, suit or counterclaim arising in connection with, out of or otherwise relating to this Guaranty.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

IN WITNESS WHEREOF, the undersigned have duly executed this Guaranty the day and year first above set forth.

**LOLA GUSMAN**

STATE    OF    NEW    YORK}

COUNTY OF NEW YORK}

On the 12th day of July 2022, before me, the undersigned, a Notary Public in and for said State, personally appeared Lola Gusman personally known to me or proved to me on the basis of satisfactory evidence to be the individuals whose names are subscribed to the within instrument and acknowledged to me that they executed the same in their individual capacities, and that by their signatures on the instrument, the individual, or the person upon behalf of which the individuals acted, executed the document.

Notary Public

SCOTT B. GORENSTEIN
Notary Public State of New York
No. 01GO5081910
Qualified in New York County
Commission Expires July 14, 20___23

## ALLONGE TO THE NOTE



Borrower:            THE HERMES HIPPIE LLC
Date of Note:        7/12/2022
Loan Amount:         $2,560,000.00
Property Address:    1 GRAND ARMY PLAZA, UNIT 4F A/K/A ONE GRAND ARMY PLAZA CONDOMINUM, BROOKLYN, NY, 11238

For Value received, I hereby transfer, endorse and assign the within Note.

Pay to the order of:

**AVENTURA LENDING LLC**, Without recourse

**LENDING ASSETS LLC**

By: _____
Name: _____
Title: _____

# Exhibit D

| **NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER**<br><br>This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument.The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | <br>2023020600752001003E9F92 |
|---|---|

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 6 |
|---|---|---|
| **Document ID: 2023020600752001** | Document Date: 02-01-2023 | Preparation Date: 02-27-2023 |
| Document Type:  LIEN OF COMMON CHARGES | | |
| Document Page Count: 5 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| MAJDA NALIC<br>260 MADISON AVE<br>15TH FLOOR<br>NEW YORK, NY 10016<br>212-702-0900<br>MNALIC@AFDNY.COM | MAJDA NALIC<br>260 MADISON AVE<br>15TH FLOOR<br>NEW YORK, NY 10016<br>212-702-0900<br>MNALIC@AFDNY.COM |

### PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| BROOKLYN | 1172 | 1129 | Entire Lot | 4F | 1 GRAND ARMY PLAZA |
| **Property Type:**  SINGLE RESIDENTIAL CONDO UNIT | | | | | |

### CROSS REFERENCE DATA

CRFN_____  *or*  DocumentID_____  *or* _____ Year_____ Reel____ Page_____  *or*  File Number_____

### PARTIES

| PARTY ONE/DEBTOR: | PARTY TWO/SECURED PA: |
|---|---|
| THE HERMES HIPPIE LLC<br>1 GRAND ARMY PLAZA A/K/A 1 EASTERN PARKWAY, APARTMENT 4F<br>NEW YORK, NY 11238 | THE ONE GRAND ARMY PLAZA CONDOMINIUM<br>C/O CENTURY MANAGEMENT, 440 9TH AVENUE<br>NEW YORK, NY 10001 |

### FEES AND TAXES

| **Mortgage :** | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES:  County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 62.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed          03-06-2023 11:55
City Register File No.(CRFN):
**2023000057942**

*Annette M Hill*
*City Register Official Signature*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-----------------------------------------------------------x
THE BOARD OF MANAGERS OF THE
ONE GRAND ARMY PLAZA CONDOMINIUM,

                                  Plaintiff,

      -against-

THE HERMES HIPPIE LLC,

                               Defendant.
-----------------------------------------------------------x

**NOTICE OF LIEN FOR
UNPAID COMMON
CHARGES**

TO:    The Recording Officer of NEW YORK COUNTY, State of New York, and whom else it may concern:

      Notice is hereby given that THE BOARD OF MANAGERS OF THE ONE GRAND ARMY PLAZA CONDOMINIUM, ON BEHALF OF THE UNIT OWNERS, the undersigned lienor, has and claims a lien for unpaid common charges, pursuant to Section 339-z of the Real Property Law of the State of New York as follows:

      1.    The name of the lienor is The One Grand Army Plaza Condominium, The Board of Managers acting on behalf of all Unit Owners of The One Grand Army Plaza Condominium, a condominium, pursuant to a Declaration of Condominium recorded on December 22, 2008 in the office of the recording officer for this county at CRFN 2008000483911 (hereinafter called the "Declaration"). Lienor's attorney is Axelrod, Fingerhut & Dennis, whose office address is 260 Madison Avenue, New York, New York 10016.

      2.    The record owner of the real property described below, against whose interest lienor claims a lien, is THE HERMES HIPPIE LLC and it is the fee owner of apartment 4F at 1 Grand Army Plaza a/k/a 1 Eastern Parkway, Brooklyn, New York 11238.

      3.    The property subject to the lien claimed herein is that portion of The ONE GRAND ARMY PLAZA CONDOMINIUM designated as apartment 4F, Block 1172, Lot 1129 in the Declaration referred to above.

      4.    As provided in the Declaration, the owner of the Unit is liable for a proportionate share of the common expenses of the Condominium equal to 1.883349% (percent) of the aggregate of such common expenses assessed to the all the units of the condominium. The Unit is held subject to all terms and conditions contained in the Declaration, including the condition that the proportionate share of common expenses set forth above must be paid by the unit owner.

5.      Common charges, air conditioning charges, late charges, attorneys' fees and administrative charges in the aggregate amount of $13,852.50 as set forth in Schedule A which is attached hereto and made a part hereof, are and remain due and owing with respect to the Unit. Additional sums representing common charges, air conditioning charges, late charges, costs and attorneys' fees will continue to become due each month.

6.      The undersigned, as the Board of Managers acting on behalf of the unit owners of a condominium organized pursuant to New York laws, claims a lien on apartment 4F until all sums for unpaid common charges and accrued interest thereon shall have been paid.

Dated: New York, New York
       February 1, 2023

                              THE BOARD OF MANAGERS OF THE ONE
                              GRAND ARMY PLAZA CONDOMINIUM, ON
                              BEHALF OF THE UNIT OWNERS

                        By:   _____
                              Marla Maritzer, President

2

VERIFICATION

STATE OF NEW YORK     )
                              ) ss.:
COUNTY OF NEW YORK   )

      MARLA MARITZER, being duly sworn, deposes and says:  I am the PRESIDENT of the THE BOARD OF MANAGERS OF THE ONE GRAND ARMY PLAZA CONDOMINIUM, ON BEHALF OF THE UNIT OWNERS, the plaintiff herein.  I have read the foregoing notice of lien for unpaid common charges, know the content thereof and the same are true to my personal knowledge, except those matters stated therein which are stated to be alleged on information and belief, and as to those matters, I believe them to be true.  My belief as to those matters therein not stated upon personal knowledge is based upon the books and records of the Plaintiff.

                                              _____
                                            MARLA MARITZER

STATE OF NEW YORK           )
                                 ) ss.:
COUNTY OF NEW YORK       )

      On the 1st day of February 2023 before me, the undersigned, personally appeared MARLA MARITZER, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

                                    _____
                                    NOTARY PUBLIC

                                                                 SEAL

                            MARTA PERALTA
                  Notary Public, State of New York
                         No. 01PE6166205
                  Qualified in New York County
               Commission Expires 05/21/2013

3

## SCHEDULE A

Common charges and additional charges are owed for apartment 4F as follows:

| | | |
|---|---|---|
| **11/1/22** | **$203.50** | **Common Charges (Balance)** |
| **12/1/22** | **$4,413.00** | **Common Charge** |
| | **$150.00** | **Late Fee** |
| | **$110.00** | **Legal Fee** |
| **1/1/23** | **$4,413.00** | **Common Charge** |
| | **$150.00** | **Late Fee** |
| **2/1/23** | **$4,413.00** | **Common Charge** |
| **TOTAL:** | **$13,852.50** | |

4

**LIEN FOR COMMON CHARGES**

**BOARD OF MANAGERS**

of

**THE ONE GRAND ARMY PLAZA CONDOMINIUM**

against

**THE HERMES HIPPIE LLC, Record Owner**

**Block 1172**
**Lot    1129**

**Notice of Lien**

**Amount: $13,852.50**

**Filed: February 27, 2023**

**Unit Designation 4F**

**AXELROD, FINGERHUT & DENNIS**
**Attorneys for Lienor**
**260 Madison Avenue, 15th Floor**
**New York, New York 10016**

5